607 P.2d 1321

SNAKE RIVER HOMEBUILDERS AS-
SOCIATION, a non-profit corpora-
tion, Plaintiff-Appellant,

v.

CITY OF CALDWELL,
Defendant-Respondent.

No. 13009.

Supreme Court of Idaho.

March 20, 1980.

Richard H. Greener of Clemons, Cosho, Humphrey & Samuelsen, Boise, for plaintiff-appellant.

Wayne E. Davis of Alexanderson, Davis, Rainey & Whitney, Caldwell, for defendant-respondent.

DONALDSON, Chief Justice.

Respondent City of Caldwell passed a resolution which revised its "Accounting Policy and Procedures Manual" with regard to its "water main extension policy" and included in that revision an increase in the cost of water pipe extensions for residential subdivisions from $2.00 per foot to $5.00 per foot. This action was taken without providing notice to the public or public hearing.

Appellant Snake River Homebuilders Association (hereinafter Homebuilders) initiated this action by filing a complaint against respondent City seeking a writ of prohibi-

tion against exacting the $5.00 per foot extension charge and for a declaratory judgment that the action of respondent in adopting the policy setting forth the increase was unconstitutional.

Both parties moved for summary judgment. The trial court granted summary judgment in favor of respondent City and Homebuilders appeals. We affirm.

Appellant Homebuilders does not question the city's authority to raise the rate charged for extensions, nor the reasonableness of the increase, but rather attacks the procedure by which the act was accomplished. Appellant's first contention is that Id.Const. art. 12, § 2 mandates that municipal action of the type here involved may be validly effected only by the enactment of an ordinance. We disagree. Article 12, § 2 of the Idaho Constitution provides:

"Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

The relevant "general law" in this case is I.C. § 50–323 which provides:

"Cities are hereby empowered to: establish, create, develop, maintain and operate domestic water systems; provide for domestic water from wells, streams, watersheds or any other source; provide for storage, treatment and transmission of the same to the inhabitants of the city; and to do all things necessary to protect the source of water from contamination. The term "domestic water systems" and "domestic water" includes by way of example but not by way of limitation, a public water system providing water at any temperature for space heating or cooling, culinary, sanitary, recreational or therapeutic uses."

■ There is nothing in either of the above-quoted provisions addressing the procedure by which a municipality may set or increase the rate charged for extending its water mains. The general rule in such cases is that stated in *LaMon v. City of Westport*, 22 Wash.App. 215, 588 P.2d 1205 (1978):

"Generally, the legislative body of a municipal corporation may act by resolution or by ordinance unless a particular mode of action is required by the constitution, a statute, a city charter or another city ordinance." 588 P.2d at 1208, 1209.

■ Appellant does not cite, nor does our research disclose, any statutory or constitutional provision expressly or implicitly requiring that a municipality act by ordinance in the establishment and amendment of rates charged for extending the city's water system. Nor is it contended the city's action was in contravention of another ordinance. Accordingly, we hold it was proper for the city to adopt the rate increase by resolution.

■ Appellant next contends that regardless of whether the city was authorized to act by resolution in this case, its action was nonetheless illegal for having been taken in the absence of public notice and hearing. Appellant cites the following language from *Feil v. City of Coeur d'Alene*, 23 Idaho 32, 129 P. 643 (1912):

"[T]he moment the city purchases this water system and begins to operate it and sells water to water consumers, and charges rates therefor . . . it will be subject to the same rules and regulations under the Constitution and statute for fixing rates as are applicable to individuals and private corporations. . . ." 23 Idaho at 53, 54, 129 P. at 650.

In appellant's view, *Feil* mandates compliance by the city with I.C. § 61–307, which requires that a public utility give thirty days' notice to the public and the Idaho Public Utilities Commission of any proposed rate or charge increase; and I.C. § 61–622, which prohibits the making of any such increase except upon a showing before and a finding by the commission that the increase is justified. However, *Feil* does not

support appellant's position because the rate-fixing statutes "applicable to individuals and private corporations," I.C. § 61–101 et seq., which were enacted after the decision in that case, exclude municipally owned utilities from their operation. The term "public utility" is defined as follows:

"61–129. Public Utility.—The term 'public utility' when used in this act includes every common carrier, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, and wharfinger, *as those terms are defined in this chapter* and each thereof is hereby declared to be a public utility and to be subject to the jurisdiction, control and regulation of the commission and to the provisions of this act . . . ." (emphasis added)

"Corporation" is in turn defined as follows:

"61–104. Corporation.—The term 'corporation' when used in this act includes a corporation, a company, an association and a joint stock association, but *does not include a municipal corporation*, or mutual nonprofit or cooperative gas, electrical, water or telephone corporation *or any other public utility organized and operated for service at cost and not for profit*, whether inside or outside the limits of incorporated cities, towns or villages." (emphasis added)

Because respondent is excluded from those utilities provided for in I.C. § 61–101 et seq., the holding in *Feil* does not make the procedures of the Public Utilities Law applicable to this case; accordingly, the fact respondent did not undertake its extension charge increase according to those procedures has no bearing on the validity of the increase.

■ In a related argument, appellant claims the city's action, taken in the absence of notice and hearing, has deprived the members of appellant of the pursuit of their occupation in violation of federal and state constitutional due process requirements. We disagree. The action taken by the city here was clearly legislative, as opposed to judicial or quasi-judicial, in nature. As such, the reasoning of Mr. Justice Holmes in *Bi-Metallic Investment Co. v. State Board of Equalization of Colo.*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), is applicable:

"Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." 239 U.S. at 445, 36 S.Ct. at 142.

Here, the act of the city in raising the extension charge was not one affecting appellant only. Rather, it was a measure of general applicability, affecting all who received the extension service. In the absence of a statutory provision or ordinance requiring it, appellant had no right to notice and hearing prior to the city's increasing the extension charge.

■ Appellant's final contention is that the resolution places no control over the city's expenditure of the funds collected for extension of water mains, and is therefore a void general revenue measure levied against a particular class of citizens. Respondent, on the other hand, maintains the resolution is in no way a revenue measure, but rather was passed to defray some of the cost of a service rendered. In support of its position, respondent city calls attention to the language of the Water Main Extension Policy itself:

"An application will be required for all extensions to the City water system on forms available in the City Engineer's office. (Exhibit No. 5)

The application is to be submitted to the Water Superintendent, who will provide the design for the water main extension or the water main system. The Water Superintendent will prepare an estimate of cost of the construction of the system to be installed. He will also prepare an estimate of cost based on the installation of 6″ pipe where the water main extension exceeds 6 inches or based on 6″ pipe for those parts of any water systems that exceed 6 inches.

The Water Superintendent submits the application, the design and the estimates to the City Engineer.

The City Engineer's office will then prepare the assessment costs using the assessment basis [of $5.00 per front foot]. The Engineer's report shall include the following:

1. An estimate of those assessment costs immediately available upon completion of the extension as requested in the application.

2. The assessment costs of other properties which the water main extension or the water system would serve but are not included in the application.

3. The actual cost of the system as prepared by the Water Superintendent.

4. The difference between (1) and (3) above which is the additional funding required to install the system requested with the recovery of the costs in item (2) in the future at some time after the completion of the system.

5. The difference between the sum of (1) and (2) and of (3) which is the unrecoverable cost funded by the City.

The City Engineer will submit his report to the Council, Mayor, Finance Director and Water Superintendent.

Applications for extensions to the City water system shall be considered as follows:

1. If the total funding required by the City is less than *$3,000.00*, and the the City funds are available, the Water Superintendent may proceed with the installation.

2. If the total City funding exceeds *$3,000.00*, the application shall be considered by the *City Council* before the Water Superintendent is authorized to proceed with the installation.

3. If any part of the total of the City funding or the entire amount of the City funding is not available by the time the applicant desires the extension to be installed, consideration will be given to entering into an agreement with the City by which the applicant may install any part of or the entire extension or system at his expense subject to the extension or system meeting all of the requirements of the City of Caldwell with regard to materials, workmanship and installation.

. . ." (emphasis in original)

In granting summary judgment in favor of respondent city, the district court concluded, from the facts before it, that the increase set forth in the resolution was predicated upon a cost recovery basis and did not constitute a revenue-raising measure. Our review of the record discloses nothing to the contrary.

The order granting summary judgment in favor of respondent city is affirmed. Costs to respondent.

SHEPARD, BAKES, McFADDEN and BISTLINE, JJ., concur.