807 P.2d 1272

**Ned LOOMIS and C.A. Grubb, suing on behalf of themselves and others similarly situated, Plaintiffs–Counterdefendants–Appellants,**

v.

**CITY OF HAILEY, a municipal corporation of the State of Idaho, Defendant–Counterclaimant–Respondent.**

No. 18321.

Supreme Court of Idaho,
Boise, October 1990 Term.

March 21, 1991.

E. Lee Schlender, Hailey, for plaintiffs-counterdefendants-appellants.

Hogue, Speck & Aanestad, P.A., Ketchum, for defendant-counterclaimant-respondent. J. Stephen Crabtree, argued.

Lindsay, Hart, Neil & Weigler, Boise, for amicus curiae Ass'n of Idaho Cities. Michael C. Moore, argued.

BOYLE, Justice.

In this appeal from entry of summary judgment we are required to determine whether the City of Hailey's particular system of charging an initial sewer and water connection fee of $1,800.00 under a city ordinance violates the Idaho Constitution and applicable portions of the Idaho Revenue Bond Act.

## FACTS

In 1969 the voters of the City of Hailey approved a $940,000.00 revenue bond to create a more efficient and more sanitary water and sewer system. Ordinances were adopted to collect user and connection fees and to establish water and sewer system funds to pay for the maintenance, operation, upkeep and repair of the system and maintain a sinking fund to pay the revenue bond indebtedness. A separate fund was created into which all revenues from the water and sewer systems were deposited. In 1981 the City of Hailey adopted an ordinance to increase the water and sewer connection fees. Because of the increasing demand another revenue bond in the amount of $490,000.00 was authorized in 1982 for the "acquisition, construction and installation of improvements and betterments to the city's water storage system."

An ordinance was passed which provided that hookup and use of the city's water and sewer systems was mandatory for all residents of the city. An ordinance was passed which increased the amount of the connection fee and imposed an additional charge for future expansion of the water and sewer systems. In 1983 a suit against the city entitled *Redman, et al. v. Hailey*, Blaine County Case No. 11855 was filed claiming that the city was collecting an illegal tax and that the connection fees were void. The district court in that case held that the connection fees were in violation of the Idaho Constitution and void because the city was collecting fees for

future expansion and enlargement of the system.

Thereafter, the City of Hailey hired JUB engineers to conduct a study and an analysis of the city's water and sewer system fees and to compute a formula for charges that would not be in contravention of the district court's mandate pronounced in *Redman v. Hailey*. After receiving the engineer's report, the city adopted Ordinance 495 in 1985 providing for the new water and sewer connection fees.

Following the adoption of Ordinance 495, appellants Loomis and Grubb, residents of the city of Hailey, filed this action challenging the constitutionality of the ordinance and the legality of the procedures utilized by the city in charging sewer and water connection fees as violative of the Idaho Revenue Bonding Act. I.C. § 50–1027.

The connection fees imposed by Ordinance 495 are based upon the replacement value minus the remaining bond principal and cumulative unfunded depreciation. This formula, termed "equity buy-in," allows the new user to buy into the system at the current dollar value which is presently charged at about $1,800.00 per connection. The city is required by the ordinance to revalue the connection fee annually pursuant to the replacement value formula. All revenue from the connection fees is placed in a separate special account and used only for replacement of existing system facilities and equipment. None of the connection fee generated funds are used for expansion or improvement of the existing systems, although reserves are accumulated periodically in both the connection fee and monthly user fee funds. The connection fees collected by the City of Hailey are inadequate to provide for the total replacement of the existing systems as those systems wear out, and any future expansion of the existing water and sewer system will require additional funding from other sources of revenue. No funds collected pursuant to Ordinance 495 are placed into or used by the general operating fund of the city, and the monthly user fees are used for normal expenses of operation, including repair and maintenance not requiring replacement of system components as well as for payment of principal and interest on the revenue bonds.

At the time this case was filed in district court, the connection fee was about $1,800.00 per connection. Since Ordinance No. 495 was adopted in 1985, the city has collected approximately $300,000.00 in connection fees and expended approximately $200,000.00 of that amount.

I.

## SUMMARY JUDGMENT: STANDARD OF REVIEW

This case comes before us on appeal from the district court's granting of a motion for summary judgment in a non-jury civil action. "A motion for summary judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Rawson v. United Steelworkers of Am.*, 111 Idaho 630, 726 P.2d 742 (1986); *Schaefer v. Elswood Trailer Sales*, 95 Idaho 654, 516 P.2d 1168 (1973). Standards applicable to summary judgment require the district court and Supreme Court upon review, to liberally construe facts in the existing record in favor of the party opposing the motion, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Brown v. Matthews Mortuary*, 118 Idaho 830, 801 P.2d 37 (1990); *Tusch Enters. v. Coffin*, 113 Idaho 37, 740 P.2d 1022 (1987); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982); *Palmer v. Idaho Bank & Trust of Kooskia*, 100 Idaho 642, 603 P.2d 597 (1979). If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982); *Farmers Ins. Co. of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976); *Stewart v. Hood Corp.*, 95 Idaho 198, 506 P.2d 95 (1973);

*Lundy v. Hazen,* 90 Idaho 323, 411 P.2d 768 (1966). Summary judgment should be granted only if there is no genuine issue of material fact after the pleadings, depositions, admissions and affidavits have been construed in a light most favorable to the opposing party. *Palmer v. Idaho Bank & Trust of Kooskia,* 100 Idaho 642, 603 P.2d 597 (1979).

When an action will be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment but rather the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts. *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982); *Blackmon v. Zufelt,* 108 Idaho 469, 700 P.2d 91 (Ct. App.1985).

In the present action neither party has claimed that any genuine issues of material fact exist. We have reviewed the entire record including the affidavits on file and find that no genuine issue of material fact exists, therefore, summary judgment as a matter of law may be entered.

## II.

### CONNECTION FEES AS A TAX

First, we must determine whether the connection fee constitutes an impermissible tax. Secondly, we must determine whether the connection fee is appropriately and reasonably assessed.

In *Brewster v. City of Pocatello,* 115 Idaho 502, 768 P.2d 765 (1989), we held that the Idaho Constitution, art. 7, § 6 "allows the legislature to 'invest in the corporate authorities ... the power to assess and collect taxes for all purposes of such corporation.'" *Id.* at 503, 768 P.2d at 766 (quoting from *Sun Valley Co. v. City of Sun Valley,* 109 Idaho 424, 427, 708 P.2d 147, 150 (1985)). While the Idaho Constitution permits municipal corporations to impose taxes, such authority is limited by the taxing power granted by the legislature. *Id.*

Municipalities may impose fees pursuant to its "police powers" to enact regulations for the furtherance of the public health, safety or morals. *Brewster v. City of Pocatello,* 115 Idaho 502, 768 P.2d 765 (1989); *see also Caeser v. State,* 101 Idaho 158, 610 P.2d 517 (1980); *Rowe v. City of Pocatello,* 70 Idaho 343, 218 P.2d 695 (1950). It is well established that fees imposed under this "police power" must bear some reasonable relationship to the cost of enforcing the regulation. *Brewster v. City of Pocatello,* 115 Idaho 502, 768 P.2d 765 (1989). There is, however, a difference between the exercise of the police power and the proprietary functions of a municipality. In *Schmidt v. Village of Kimberly,* 74 Idaho 48, 256 P.2d 515 (1953), we stated this difference as follows:

> There is no inconsistency between the holding herein that in the operation of a public utility the village exercises a proprietary function, and the holding that in requiring connections to be made with the sewage system the village is exercising its police power, which is a governmental function. The fact that an ordinance, providing for the establishment and operation of a municipal water and sewage system, may also contain regulations within the police power, is not conflicting, inconsistent, or an improper comingling of the two recognized functions of a municipality. The one is regarded as complimentary of the other. If the water and sewage system were privately owned and operated, unquestionably the municipality could by ordinance regulate the operation in the interest of public health, and, in so doing, require residents to connect with and use the system.

*Id.* at 63, 256 P.2d at 524.

Pursuant to this proprietary function municipalities may construct and maintain certain public works. The Idaho Constitution, art. 8, § 3 [1] allows municipalities to impose

---

1. The current and applicable version of art. 8, § 3 of the Idaho Constitution provides in pertinent part:

    **§ 3. Limitations on county and municipal indebtedness.**—No county, city, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year without the

rates and charges to provide revenue for public works projects, and pursuant to this section of the Constitution, the Idaho legislature enacted the Idaho Revenue Bond Act, codified at I.C. § 50–1027 through § 50–1042. It is pursuant to this Act and a municipality's proprietary function that the City of Hailey derives its authority to charge water and sewer connection fees.

The Idaho Revenue Bond Act grants municipalities the right to operate public works "for the use and benefit of those served by such works and for the promotion of the welfare and for the improvement of health, safety, comfort and convenience" of its residents. I.C. § 50–1028. In order to accomplish this task, cities in Idaho are given the authority by the legislature to issue "revenue bonds ... to finance, in whole or in part, the cost of the acquisition, construction, reconstruction, improvement, betterment or extension of any works ..." Idaho Code § 50–1030(e). In addition, municipalities may "prescribe and collect rates, fees, tolls, or charges, ... for the services, facilities and commodities furnished by such works ..." Idaho Code § 50–1030(f).

In *Schmidt v. Village of Kimberly*, this Court upheld the validity and constitutionality of the Idaho Revenue Bond Act and stated:

> The charges made for water and sewer service are not taxes. (Citations omitted.) These charges are imposed upon, and collected from, all of the residents and users in the village, regardless of whether or not they are taxpayers. By the 1950 amendment to the constitution, by the Revenue Bond Act, by the provision of the ordinance and the bonds themselves, neither the village nor its taxpayers are obligated for the payment of the bonds. Hence the provisions of our statutes, governing elections on the question of issuance of general obligation bonds, have no application.

*Id.* 74 Idaho at 65, 256 P.2d at 525.

Thus, when the rates, fees and charges conform to the statutory scheme set forth in the Idaho Revenue Bond Act or are imposed pursuant to a valid police power, the charges are not construed as taxes. *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953). However, if the rates, fees and charges are imposed primarily for revenue raising purposes they are in essence disguised taxes and subject to legislative approval and authority. In *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1989), we upheld the trial court's entry of summary judgment in a citizen's action to prohibit enforcement of collection terms of a city ordinance imposing street restoration and maintenance fees upon residents. In *Brewster*, we held that the ordinance was a disguised tax and that the constitutional grant of taxing power to cities is not self-executing or unlimited, but rather is limited by what taxing power the legislature authorizes in its implementing legislation. In *Brewster* we said:

> In the instant case it is clear that the revenue to be collected from Pocatello's street fee has no necessary relationship to the regulation of travel over its streets, but rather is to generate funds for the non-regulatory function of repairing and maintaining streets. The maintenance and repair of streets is a non-regulatory function as the terms apply to the facts of the instant case. We view the essence of the charge at issue here as imposed on occupants or owners of property for the privilege of having a public street abut their property. In that respect it is not dissimilar from a tax imposed for the privilege of owning property within the municipal limits of Pocatello. The privilege of having the usage of city streets which abuts one's property, is in no respect different from the

assent of two thirds (⅔) of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on

such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty (30) years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: ...

privilege shared by the general public in the usage of public streets.

. . . .

We hold therefore, that the attempted imposition of the "fee" by the city of Pocatello is in reality the imposition of a tax. The city has previously recognized such principle and attempted to gain the support of the electorate for the much needed street programs. That voter approval has been denied. To some, that withholding of approval for necessary repairs may be shortsighted and/or self-defeating, but that nevertheless has been the view of the electorate, and it will not be overturned by validating the actions of the city here, no matter how well-intentioned and desirable the ultimate result may be.

115 Idaho at 504, 768 P.2d at 768.

■ The Idaho Revenue Bond Act authorizes the collection of sewer connection fees, *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953), and it is clear that so long as the fees collected pursuant to the Idaho Revenue Bond Act are allocated and budgeted in conformity with that Act they will not be construed as taxes. However, if fees are collected under the disguise of the Act and allocated and spent otherwise, then the fees are primarily revenue raising and will be construed as taxes. *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1989). Thus, to determine whether the sewer connection fees are in reality taxes in disguise we must determine whether the monies collected from those funds are dispersed in accordance with that Act.

It is undisputed that the City of Hailey places the connection fees into a separate fund to be used for replacement of sewer and water system components, however, no

monies from this fund are transferred to the city's general fund, and none are used to retire the bond indebtedness. The monthly service charges are used to pay for the bond indebtedness and general operating costs of the systems.

Appellants argue that if the city finances replacement of its sewer and water systems from rates, fees or charges it will in effect circumvent the Idaho constitutional bonding requirement and the city will be able to build a completely new system without requiring voter approval. Appellants rely upon *Redman v. City of Hailey*, Blaine County District Court Case No. 11855, Memorandum Decision (June 4, 1984),[2] an unreported district court case, and argue that the replacement of a complete water and sewer system can never be considered a "necessary expense" which can be funded under the police power granted by the legislature and that the cost of replacing the sewer system is not a reoccurring expense that is "necessary and ordinary" nor is it authorized by the general laws of the state. In *Redman*, the district court found that funding a capital reserve for future expansion "avoids the necessity of an unpopular bond election," and held that the development fees collected for future expansion were unconstitutional. The issue in *Redman v. City of Hailey* is readily distinguishable from this case in several respects including in that case the fees were to be collected and used for *future expansion* of the sewer system,[3] and following the *Redman* decision, the city of Hailey adopted Ordinance 495 which altered the fashion in which connection fees were collected and utilized.

Appellants also rely upon *O'Bryant v. City of Idaho Falls*, 78 Idaho 313, 303 P.2d 672 (1956). However, *O'Bryant* is signifi-

**2.** *Redman v. City of Hailey,* is an unreported district court decision that was not appealed to this Court and as such is not cited as legal or binding precedent. However, because of common parties and its importance to those parties, and its historical role in the adoption of Ordinance 495, *Redman v. City of Hailey* is discussed herein.

**3.** Although the City of Hailey argues that a municipality may charge a fee for future expan-

sion, that issue is not present in the instant appeal. Nor, were issues of res judicata or collateral estoppel as a result of *Redman v. City of Hailey* raised before the trial court in this action. Since the precise issue of whether fees may be collected for future expansion of a sewer or water system is not before us on this appeal, we leave for another day the determination of that issue.

cantly different from the facts in this case. In *O'Bryant* the City of Idaho Falls attempted to organize a cooperative for the purpose of constructing and operating a gas distribution system throughout the city without complying with the bonding requirements of the Idaho Constitution. Consequently, in *O'Bryant* the Court held that art. 8, § 3 of the Idaho Constitution precluded the City of Idaho Falls from incurring the financial obligation of constructing and operating a gas distribution system · without a vote of the qualified electors.

Idaho Code § 50–1033 specifically allows a municipality to use revenues collected from users of the system to "provide for all expenses of operation, maintenance, *replacement and depreciation* of such works ... including *reserves therefor;* ... and (e) provide a reserve for improvements to such works...." In addition, I.C. § 50–1032 requires the system to be "self-supporting" and allows reserves to be accumulated for maintenance and rehabilitation of the system. *See also* I.C. § 50–1033. In *City of Pocatello v. Peterson*, 93 Idaho 774, 473 P.2d 644 (1970), we reaffirmed the proposition stated in *Hickey v. City of Nampa*, 22 Idaho 41, 124 P. 280 (1912), that an expenditure which is incurred for the purpose of repairing a public work is within the provision of ordinary and necessary expense exception of Idaho Constitution, art. 8, § 3. In *Asson v. City of Burley*, 105 Idaho 432, 670 P.2d 839 (1983), the Court stated:

> Comparison of these earlier cases reveals one clear distinction between those expenses held to be ordinary and necessary and those held not to be: new construction or the purchase of new equipment or facilities as opposed to repair, partial replacement or reconditioning of existing facilities.

*Id.* at 441, 670 P.2d at 848.

■ Article 8, § 3 of the Idaho Constitution prohibits municipalities from incurring any indebtedness or liability exceeding the income or revenue of that year unless the indebtedness or liability is approved by two-thirds of the qualified electors. Ordi-

nary and necessary expenses are, however, expressly excepted from this provision. In this case the issue presented is whether a municipality may accumulate collected revenues from one year to pay for expenses to be incurred in the future. Since ordinary and necessary expenses are exempt from the annual expenditure limitation, we hold that a municipality may accumulate collected revenues from rates, charges or fees to fund the cost of replacement of system components in its public works projects which are ordinary and necessary. Idaho Constitution, art. 8 § 3; *see generally* 56 *Am.Jur.2d Municipal Corporations, Etc.* § 608 (1971). Idaho Code § 50–1033 allows for the accumulation of reserves for this limited purpose, and there is no constitutional prohibition to this procedure.

■ In the instant case the City of Hailey is not incurring any indebtedness and voter approval pursuant to art. 8, § 3 of the Idaho Constitution is required only when the city is incurring indebtedness.

Furthermore, I.C. § 50–1033 gives the municipality the "right to appropriate, apply or expend the revenue" for the statutory purposes so long as no funds are transferred to the municipality's general fund. Thus, the City of Hailey has the discretion to allocate revenues collected from rates, fees and charges so long as it complies with the purposes of the Idaho Revenue Bond Act requirements. In the present case, the fact that connection fees are specifically expended on replacement of system components is entirely within the discretion of the city government as long as other revenues allowed by I.C. § 50–1033 from the system are appropriately used to pay for the other necessary purposes including retirement of bond indebtedness.

The proceeds of the connection fee for water and sewer service are dedicated to those systems. Those funds are kept in a separate, segregated account and are not used for general fund purposes. Further, only users of those services are charged and those fees are not utilized for general fund or for future expansion of the water and sewer system.

Because the funds collected from connection fees by the City of Hailey are specifically allocated in accordance with the Idaho Revenue Bond Act, the fees are not collected for general revenue raising purposes and are, therefore, not taxes. We hold that under these circumstances a municipality may collect fees, rates or charges pursuant to the power granted in the Idaho Revenue Bond Act to pay for maintenance, depreciation and replacement of system components.

## III.

### LEGALITY OF "EQUITY BUY-IN" CONNECTION FEE

We now address appellants' argument concerning the City of Hailey's method of determining the amount of the connection fee. Appellants argue that the equity buy-in method imposed by the city is irrational, arbitrary and unconstitutional because the new-user is charged an amount that is unrelated to the services received.

### A. *Not Necessary to Have Connection Fees Approved by Voters.*

Appellants argue that I.C. § 50-1035 requires that a specific charge for the connection fee, the method of repayment of bonds, and the creation of reserves be established at the time the bonds are issued, rather than imposing or changing the structure of such charges several years later as the City of Hailey did in this case. However, contrary to appellants' assertion, I.C. § 50-1035 requires only that the municipality obtain an estimate of the system cost before a bond election is held. The statute does not require that the electors approve all changes to the rates, fees, or charges used to finance public works projects. Furthermore, I.C. § 50-1030(f) specifically gives the municipality the power to set and prescribe the rates, tolls and charges to support the system. As we held in *Snake River Homebuilder's Assoc. v. City of Caldwell*, 101 Idaho 47, 607 P.2d 1321 (1980), a municipality may change its user rates by resolution. Accordingly, we hold that it is not necessary that a municipality have an election

such as prescribed in art. 8 § 3 of the Idaho Constitution prior to changing the rates, fees or charges imposed in establishing the cost of public works services such as sewer or water connection fees as presented in the instant case.

### B. *Reasonableness of Hailey's Connection Fee.*

Appellants argue that the connection fee of $1,800.00 is excessive and inappropriately assessed because it is not based on historical costs, that no new demand or cause for an adjustment or increase in the rates has been shown, and that the fee was determined in an arbitrary manner.

Idaho Code § 50-1028 sets forth the manner in which the city must operate the public works system:

> **Grant of Authority.** Any city acquiring, constructing, reconstructing, improving, bettering or extending any works pursuant to this act, shall manage such works in the most efficient manner consistent with sound economic and public advantage, to the end that the services of such works shall be furnished at the lowest possible cost. No city shall operate any works primarily as a source of revenue to the city, but shall operate all such works for the use and benefit of those served by such works and for the promotion of the welfare and for the improvement of the health, safety, comfort and convenience of the inhabitants of the city.

In *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953), this Court stated:

> It is clear that the legislature clothed the municipality with power to make and enforce any and all reasonable regulations, rates and charges necessary to make the system self-supporting and to produce the revenue for the payment of the bonds. At the same time it has required that any such regulations and charges shall not be unreasonable, it being specifically provided in section 2, § 50-2813, I.C., [now § 50-1028], that the services are to be furnished at the lowest possible

cost and that the municipality shall not operate the works primarily as a source of revenue.

*Id.* 74 Idaho at 64, 256 P.2d at 525.

In *Kootenai County Property Ass'n v. Kootenai County*, 115 Idaho 676, 769 P.2d 553 (1989), the property owners challenged the appropriateness of a flat fee rate imposed instead of a rate which reflected actual sewage use. We held in that appeal that the flat fee rate was reasonable even though it was possible to monitor solid waste disposal and charge a fee based upon actual use. The Court in *Kootenai County Property Ass'n* held that the legislature has not imposed exacting rate requirements upon localities and the law requires only that the fee be reasonably related to the benefit conveyed.

■ It is not the province of this Court to determine how a municipality should allocate its fee and rate system. So long as the fees and rates charged conform to the statutory requirements and are reasonable, the fees, rates and charges will be upheld. The fees, rates and charges imposed by the municipality must be reasonable and produce sufficient revenue to support the system at the lowest possible cost as required by the Idaho Revenue Bond Act. I.C. § 50–1028; *Schmidt v. Village of Kimberly*, 74 Idaho 48 at 64, 256 P.2d 515 at 525 (1953).

Appellants argue that the connection fee of $1,800.00 bears no relationship to the costs of inspecting or actually hooking up or connecting to the system. However, as noted above, a connection fee may be imposed by the police power or other statutory power and will be upheld by the courts if it is not unreasonable and not arbitrarily imposed. *Kootenai County Property Assn. v. Kootenai County*, 115 Idaho 676, 769 P.2d 553 (1989).

In *Common Council (Crown Point) v. High Meadows, Inc.*, 173 Ind.App. 138, 362 N.E.2d 1166 (1977), which appellants cite in support of their proposition, the Indiana Court of Appeals addressed this question and concluded that where a fee is authorized solely to carry out a regulatory purpose, the amount that may be charged is limited to the necessary or probable expense of issuing the license, inspecting and regulating the activity.

■ However, merely because the charge represents something more than the actual cost of the actual physical hookup does not make the connection fee illegal. In *Crown Point* the Indiana Court of Appeals concluded that the connection fee was illegal because the municipal council did not have the statutory authority to charge a new connector a fee separately and different from fees charged to existing users. In *Crown Point* the Indiana statutes involved required the municipality to levy a charge that was either the equivalent to the expense of furnishing the services or a charge which was payable by each and every user equally. In Idaho, however, we are interpreting a much different statute, and the statutory limitations on fees and rates are not as narrow as those asserted by appellants. Although fairness and equity must be considered, Idaho statutes require only that the fees be reasonable and not be imposed arbitrarily. *Kootenai County Property Ass'n v. Kootenai County*, 115 Idaho 676, 769 P.2d 553 (1989); *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953).

In *Meglino v. Township Committee of Eagleswood*, 103 N.J. 144, 510 A.2d 1134 (1986), the New Jersey Supreme Court upheld a sewer connection charge which required new users to pay a proportionate share of the original construction cost retired by prior connectors. However, the Court stated that "there may be any number of ways in which computation of a fair share can be fixed" and "regardless of what method of financing is chosen, equality of treatment is obviously the polestar." *Id.*, 510 A.2d at 1140. The New Jersey Supreme Court then concluded:

This Court has never imposed on municipalities an orthodoxy of ratemaking. (Citation omitted.) Nor has it been enough that a court differed from [the municipality] as to the basis for the rates. This is not the function of a court in reviewing whether the fixing of rates was arbitrary or unreasonable. *By their very nature*

*sewer rates cannot be fixed so that they will apply with exactness.*

*Id.* (Citations omitted, emphasis added.)

Similarly, in Idaho the statutory scheme in place requires only that the rates and charges be reasonable and sufficient to support the public works project, including the retirement of bond indebtedness and operating costs. Both *Schmidt v. Village of Kimberly,* 74 Idaho 48, 256 P.2d 515 (1953), and *Kootenai County Property Assn. v. Kootenai County,* 115 Idaho 676, 769 P.2d 553 (1989), concerned specific rates and charges imposed by the municipalities. Since rates in question in those cases were reasonable they were upheld by this Court on appeal.

Thus, having reviewed the requirements of art. 8, § 3 of the Constitution, and the provisions of the Idaho Bond Revenue Act, we must analyze Ordinance 495 to determine whether the connection fee complies with these guidelines. The Ordinance drafted after receiving the engineers' report calculates the connection fee by first determining the gross replacement value of the system by using an engineering cost index to determine present day replacement cost of the system components.[4] Unfunded depreciation and bond principal are then subtracted from the gross replacement value to determine the net replacement value of the system for the current year. The final connection fee is then ultimately determined by dividing the net system replacement value by the number of users the system can support. The new user is charged the value of that portion of the system capacity that the new user will utilize at that point in time.

Appellants argue that the system created by Ordinance 495 is unfair and that the city should use the historical cost rather than the adjusted replacement cost to determine the connection fees. While we note that an historical cost basis may produce a lower connection fee, the city is not required by the controlling statutes to use historical cost as a basis to determine the connection fee. As stated above, it is not for the courts to determine what methodology the city must use in determining its fees, rates and charges. The court's limited role in this situation is to determine whether the fees, rates and charges conform to the statutory requirements, are reasonable and are not arbitrary.

Appellants claim that because accumulated depreciation before 1985 is not accounted for in the formula of Ordinance 495, that it overvalues the system and, therefore, requires the new connector to pay an unreasonable and excessive amount. In this case, the City of Hailey hired an engineering firm to determine various methods of ratemaking and adopted one of those valid methods which it determined complied with the Act and best met the city's needs. The method adopted by the City of Hailey attempts to define the current value of the system and then apportions a share of the value of that system to the new user.

Idaho's statutory scheme does not require a new user to "buy in" to the system, nor does it prohibit such a program. In this case the City of Hailey, after receiving an engineering report, selected a system in which the new user buys into a portion of the current value of the

4. Ordinance 495 requires an annual valuation process to set the amount of the connection fee and provides in pertinent part:

(2) *Connection Fee. The basis for the connection fee charge* for those persons or entities connecting to the water and sewer systems is to *charge the value of that portion of the system capacity that the new user will utilize at that point in time. The value of the system is determined each year* by taking the original construction cost of each major capital improvement to the system and determining the cost to replace that improvement in that particular year. This is accomplished by determining the engineering news record construction costs index (ENR(CC1) in the year that the improvements were made and the year that the connection fee is being determined. The ENR(CC1) for the year that the connection fee is being calculated is divided by the ENR(CC1) for the year in which the improvements were made. This value is then multiplied by the original cost for the improvements. The value obtained is the estimated cost to replace the improvements at the time the connection fee is calculated. The gross value to replace the system must be adjusted by subtracting the remaining bond principal to be retired and the unfunded depreciation to obtain the net value. (Emphasis added.)

444

system capacity. The methodology used to determine the value of the system is not unreasonable, nor is it unreasonable to charge a new user the value of that portion of the system capacity that the new user will utilize at that point in time. The fact that the connection fee may be higher in Hailey than in other municipalities will not invalidate the fee as long as it is reasonable and is not primarily a source of revenue. The Ordinance specifically states that its intent is to "recover the costs of operating, maintaining, replacing, and depreciating the existing water and sewer systems and any extensions thereof." Ordinance 495, Recitals. There is nothing in the ordinance that is not authorized by the Idaho Revenue Bond Act and we find no evidence in the record that the fees charged by the City of Hailey are arbitrary or unreasonable. We affirm the decision of the district court.

## IV.

### ATTORNEY FEES

The City of Hailey counterclaimed for an award of attorney fees claiming that the action was frivolously brought by the appellants. The district court held that Loomis and Grubb had participated in *Redman, et al. v. Hailey*, Blaine County Case No. 11855, and were familiar with the manner in which the ordinance was drafted and that therefore the case was brought frivolously, unreasonably and without foundation. Attorney fees were awarded to the City of Hailey by the district court pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). Generally, an award of attorney fees will rest in the sound discretion of the district court and will not be disturbed on appeal. *Soria v. Sierra Pac. Airlines*, 111 Idaho 594, 726 P.2d 706 (1986); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). However, in this case we have been presented with a novel question. We have considered whether an equity buy-in method of determining connection fees was reasonable and whether the collection and use of those fees for replacement of system components constituted a revenue raising method not authorized by law. Further-

more, the district court's decision in *Redman* contains some dicta that infers that the city's collection and use of connection fees in this case may be unauthorized. It is clear that this dicta resulted in some confusion for appellants. Considering these circumstances we are of the opinion that the case was not brought frivolously, unreasonably or without foundation. The district court's award of attorney fees is hereby reversed.

Therefore, the district court's order granting summary judgment and awarding costs is affirmed.

Costs on appeal to respondent. No fees awarded on appeal.

BAKES, C.J., and BISTLINE and JOHNSON, JJ., concur.

McDEVITT, J., concurs in the result.