**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49755**

| | | |
|---|---|---|
| **MEDICAL RECOVERY SERVICES,** an Idaho limited liability company, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | **Boise, January 2024 Term** |
| v. | ) ) | **Opinion Filed: March 25, 2024** |
| **CIERRA MOSER,** nka **CIERRA SWENSON,** | ) ) ) | **Melanie Gagnepain, Clerk** |
| Defendant-Respondent. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Franklin County, Mitchell W. Brown, District Judge. Eric S. Hunn, Magistrate Judge.

The judgment of the district court is <u>affirmed</u>.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for Appellant. Bryan N. Zollinger submitted argument on the briefs.

Bearnson & Caldwell, LLC, Logan, Utah, for Respondent. Wayne K. Caldwell submitted argument on the briefs.

_____

BRODY, Justice.

This case concerns a medical debt collection claim between Medical Recovery Services, LLC ("MRS"), a debt collection service acting on behalf of Franklin County Medical Center ("FCMC"), and Cierra Moser for medical services Moser received at FCMC while she was an employee. The magistrate court granted partial summary judgment in favor of MRS regarding a minimum principal amount of debt owed by Moser. During a bench trial, the magistrate court considered the remaining issue of whether FCMC could retract Moser's 50% employee discount before assigning the debt to MRS for collection. The magistrate court decided in favor of MRS. However, on appeal, the district court reversed the partial grant of summary judgment and remanded all issues for retrial. MRS challenges the district court's conclusion that there are

1

disputed facts requiring retrial of all issues. For the reasons below, we affirm the district court's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Cierra Moser is a former employee of FCMC. While employed, Moser received medical services from FCMC on several occasions. The dates of service most pertinent to this appeal occurred on October 28, 2015, and January 28, 2016. During Moser's employment, FCMC offered its employees a medical benefit. When an employee received medical services at FCMC, and after receipt of payment from insurance, FCMC would "write-off" 50% of the unpaid portion of the bill. After the 50% employee healthcare discount ("50% discount") was applied, the employee would be responsible for the remaining unpaid balance.

Moser was billed $4,139.60 for the October 2015 medical service. Moser's insurance paid $1,305.75 of this charge. The resulting unpaid balance for the October 2015 medical service was $2,833.85. Moser was billed $2,102.90 for the January 2016 medical service, and her insurance paid $149.85 of this charge. The resulting unpaid balance for the January 2016 medical service was $1,953.05. After Moser's insurance company tendered payment for these two dates of service, the remaining combined unpaid balance was $4,786.90. The 50% discount was applied to this balance, and the remaining unpaid balance was $2,393.45. During her employment, Moser agreed to and was making payments on this balance through regular $25.00 deductions from her paychecks.

In December 2016, FCMC terminated Moser's employment. After Moser was terminated and no longer receiving paychecks from FCMC, no further payroll deductions were applied to her account. Following Moser's termination, Babett Keller, a financial counselor for FCMC, added the discounted amounts for the two previously discussed dates of services back onto Moser's balance. In May 2017, Keller assigned Moser's principal debt totaling $4,726.99 to MRS for collection.

### B.    Procedural Background

In November 2019, MRS filed a complaint to collect the alleged medical debt from Moser in the amount totaling $4,726.99, plus prejudgment interest. The complaint asserted that Moser had "failed to pay the indebtedness in full." In March 2020, MRS filed a motion for summary judgment. In a declaration submitted with MRS' motion for summary judgment, Keller claimed

"[t]he policy at [FCMC] is that an employee loses her employee discount if the employee fails to pay her share of the bill after applying the employee discount." MRS included an undated copy of FCMC's employee healthcare discount policy ("policy") with Keller's declaration.

In an affidavit submitted by Moser responding to MRS' motion for summary judgment, Moser alleged she never received a bill from FCMC and was not otherwise notified of an outstanding balance until she was served with MRS' complaint. Rather, Moser claimed that in October 2016, before she left on a sabbatical and a few weeks before her termination, she inquired about the balance on her account. She alleged that an FCMC human resources employee informed her the outstanding medical bills had been "paid in full." In addition to asserting that her bills were paid in full, Moser also contested FCMC's decision to add back onto her balance the discounted amounts for the service dates at issue. She maintained that, during her employment, it was not FCMC's policy to add the discounted amount back onto an employee's balance upon resignation or termination. At this point, the magistrate court denied MRS' motion for summary judgment and requested an accounting of all of Moser's accounts, including charges and payroll deductions.

In May 2020, Moser subpoenaed FCMC to produce, among other information, a "true and correct copy of the 2011 [p]olicy" and proof of the date the policy was effectuated. FCMC responded with a copy of the healthcare discount policy current to March 27, 2020. FCMC explained that the 2011 policy was "no longer available due to age and policies [being] updated periodically," with the last update on March 27, 2020, replacing the old policy.

In August 2020, MRS filed a motion asking the magistrate court to reconsider its denial of summary judgment. The motion included a new declaration by Keller to address the concerns raised by the magistrate court when it denied summary judgment. Keller provided a list of account transfers and explained that "[e]ach time a patient is seen at FCMC, FCMC opens a patient account and gives that visit a specific account number." Then, "[w]hen a patient has several accounts, FCMC will often transfer balances onto one account to keep a running total of the amount owed by the patient . . . ." FCMC uses that "one account" to make payroll deductions. Both parties refer to this as the employee "payroll account." Keller followed this practice in creating such an account for Moser. Keller also explained that she sent "[Moser's] account to collections after both her accounts were not paid in full 12 months after the services, [Moser] no longer worked for FCMC subject to payroll deduction payments, and [Moser] had made no arrangements to continue making payments on her account."

3

Moser responded with her own supplemental affidavit contesting several of the account transfers and summaries provided by Keller. Moser contested the inclusion of $843.00 charged to her account for medical services received by her ex-husband. Moser denied ever agreeing to pay for her ex-husband's medical services and asserted that transferring his balance to her account was improper because she was neither the patient nor the guarantor for his medical service. Moser asserted that her payroll deductions were to be applied solely to her own balances. Moser also alleged several "errors" in FCMC's accounting, including several of her accounts never receiving the 50% discount, and discrepancies between the original balance in the complaint listing $4,726.99 compared to newer discovery from FCMC showing a balance of $3,211.81, a $1,515.18 difference. The magistrate court denied MRS' motion for reconsideration, stating there was a genuine dispute of material fact over the "amount owed and whether all billings are for [Moser]."

MRS then filed a motion asking the magistrate court to reconsider its denial of the prior motion for reconsideration. MRS included additional declarations by Keller to address the concerns raised by the magistrate court. In Keller's new declaration, she attempted to resolve the dispute over the charges by more thoroughly explaining the charged amounts and accounting procedures. She also claimed that Moser agreed to pay her ex-husband's balance by transferring his charges to her payroll account. Keller alleged that, prior to Moser's termination, Moser paid almost all her ex-husband's service charges via payroll deductions without objection. Keller submitted a document signed by Moser agreeing to payroll deductions dated the same day Moser's ex-husband's account was transferred to Moser's.

In response to MRS' second motion for reconsideration, Moser alleged that there were still genuine disputes of material fact left unresolved by Keller's declarations. She continued to contest the accuracy of FCMC's accounting practices, their accounting summaries, and their use of her payroll deductions to pay her ex-husband's account balance. She also argued that FCMC's failure to provide the 2011 version of their policy rendered its contents in dispute.

The magistrate court held a hearing on MRS' second motion for reconsideration. At the conclusion of the hearing, the magistrate court orally granted MRS partial summary judgment, ordering that Moser owed a minimum principal sum of $2,308.21. The magistrate court found the only triable issue of fact remaining was whether FCMC could add back on the discounted amounts before assigning the debt to MRS. This issue would determine whether Moser owed the minimum principal sum of $2,308.21 or an additional amount.

4

During a bench trial, both parties called Keller as a witness. Keller testified from memory about the contents of the 2011 policy. MRS did not introduce a copy of the 2011 policy, but admitted a copy of the 2020 policy into evidence. In Moser's written closing argument, she argued that both the copy of the 2020 policy and Keller's testimony regarding the 2011 policy were inadmissible under the "best evidence rule." *See* Idaho Rule of Evidence 1002, 1004. After the trial, the magistrate court ruled that FCMC was entitled to add the discounted amounts back onto Moser's balance before it assigned the debt to MRS. The magistrate court entered judgment for MRS totaling $8,067.88. This total consisted of $4,616.42 as the principal sum, $2,520.94 for prejudgment interest, $500 for MRS' attorney fees, and $430.52 for MRS' costs.

MRS appealed the magistrate court's decision to award it only $500 in attorney fees. MRS argued that the magistrate court erred by not considering the factors set forth in Idaho Rule of Civil Procedure 54(e)(3), which a court must consider when granting attorney fees to parties in a civil action. Moser cross-appealed the magistrate court's decision to grant MRS partial summary judgment for the minimum principal balance of $2,308.21. Moser also cross-appealed the court's conclusion that FCMC was entitled to add back on the discounted amounts, arguing that Keller's testimony regarding FCMC's 2011 policy was improperly admitted in violation of the "best evidence" rule. *See* I.R.E. 1002, 1004. On appeal to the district court, Moser requested the magistrate court's trial and post-trial decision hearing transcripts but did not request the transcript from the summary judgment hearing.

The district court concluded that the magistrate court erred when it granted partial summary judgment to MRS for a minimum principal sum. The district court held that the record was "replete" with materially disputed facts regarding what amount, if any, Moser owes to FCMC, which precluded a grant of summary judgment. The district court also determined that the issue of whether Moser was entitled to the employee discount was "intertwined" with determining what amount, if any, Moser owes FCMC. Therefore, the district court remanded all issues for retrial and awarded costs to Moser as the prevailing party.

MRS timely appealed to this Court, arguing that the district court erred when it: (1) reversed the magistrate court's grant of partial summary judgment; (2) remanded all issues for retrial; and (3) awarded costs to Moser as the prevailing party. On appeal to this Court, MRS did not include in the record on appeal the trial or post-trial decision hearing transcripts from the magistrate court.

For the reasons below, we affirm the decision of the district court.

5

## II.    STANDARD OF REVIEW

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *O'Holleran v. O'Holleran*, 171 Idaho 671, 673, 525 P.3d 709, 711 (2023) (quoting *Kelly v. Kelly*, 171 Idaho 27, 34, 518 P.3d 326, 333 (2022)). "[T]his Court primarily considers the magistrate court's decision and affirms or reverses the district court's decision as a matter of procedure." *Van Orden v. Van Orden*, 170 Idaho 597, 615, 515 P.3d 233, 251 (2022). A grant of summary judgment is reviewed de novo, which is the same standard used by the district court on intermediate appeal to review a magistrate court's grant of summary judgment. *See Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016); *First Sec. Corp. v. Belle Ranch, LLC*, 165 Idaho 733, 740, 451 P.3d 446, 453 (2019).

## III.    ANALYSIS

**A.    The district court did not err in reversing the magistrate court's partial grant of summary judgment because disputed issues of material fact exist in the record.**

MRS contends the district court erred in reversing the magistrate court's grant of partial summary judgment for two reasons: (1) the district court did not have a sufficient record before it to review the basis for the magistrate court's ruling because, on intermediate appeal, Moser failed to provide the transcript of the magistrate court's summary judgment ruling; and (2) even if the transcript was unnecessary for review on intermediate appeal, there is no dispute that Moser owed a minimum principal debt of $2,308.21. Each argument is addressed in turn.

*1. Moser's failure to include the transcript of the magistrate court's bench ruling does not inhibit de novo review and a reversal of partial summary judgment.*

MRS argues that, under de novo review of the record, the district court could not have properly determined whether there were issues of fact precluding partial summary judgment. In support of this argument, MRS points to the fact that Moser failed to request the transcript of the magistrate court's summary judgment ruling, which, MRS contends, would have provided the magistrate court's findings of fact and conclusions of law, including the inferences it drew to conclude there were no genuine disputes of material fact. Because the district court did not have this transcript before it on review of the magistrate court's decision, MRS argues that the district court was unable to determine whether the magistrate court's inferences were proper or whether the partial grant of summary judgment logically followed from them. We disagree.

6

The underlying standard of review from a grant of summary judgment, whether it is before the district court on intermediate appeal or this Court, is de novo review. *See Huber v. Lightforce USA, Inc.*, 159 Idaho 833, 841, 367 P.3d 228, 236 (2016). Summary judgment is only appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016); I.R.C.P. 56(a), (c). If the trial court will act as the factfinder at trial, it is "entitled to arrive at the most probable inferences based upon the *undisputed evidence*" in the record and "grant . . . summary judgment despite the possibility of conflicting inferences." *See First Sec. Corp. v. Belle Ranch, LLC*, 165 Idaho 733, 740, 451 P.3d 446, 453 (2019) (emphasis added) (quoting *Tiller White, LLC*, 160 Idaho at 419, 374 P.3d at 582). Such inferences by the trial court at summary judgment are not subject to de novo review; instead, they are upheld on appeal "if reasonably supported by the record." *Id.*; *Beus v. Beus*, 151 Idaho 235, 238, 254 P.3d 1231, 1234 (2011) ("The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences." (quoting *Shawver v. Huckleberry Ests., L.L.C.*, 140 Idaho 354, 360–61, 93 P.3d 685, 691–92 (2004)). Critically, these inferences may only be drawn from uncontroverted facts in the record. *See Loomis v. City of Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991). Thus, if de novo review of the record reveals controverted facts, an appellate court can reverse a grant of summary judgment without ever reaching the more deferential standard of review for reasonable inferences. In such circumstances, the appellate court's ability to review transcripts of a trial court's inferences is inconsequential.

Here, the district court recognized that it was unable to determine the reasonableness of the magistrate court's inferences because the district court did not have those inferences before it. However, the district court also correctly recognized that it was still required to conduct a de novo review of the record to determine whether there was a dispute of material fact. The district court was not barred from reversing the grant of partial summary judgment through de novo review of the same record that was before the magistrate court when it ruled from the bench. When a dispute is apparent in the record, the reviewing court is required to reverse a grant of summary judgment, regardless of what inferences the lower court may have made. Thus, the district court did not err in applying de novo review to the record.

*2. There is a disputed issue of material fact concerning what amount, if any, Moser owes in medical debt, precluding a grant of partial summary judgment in favor of MRS.*

7

MRS next argues that the district court erred in reversing the magistrate court's grant of partial summary judgment because it is undisputed that Moser owes a minimum principal debt of $2,308.21. We disagree. A de novo review of the record reveals a material dispute of fact over what amount, if any, Moser owes. Therefore, MRS was not entitled to partial summary judgment for any amount. The district court did not err in reversing the magistrate court's grant of partial summary judgment for a minimum principal debt of $2,308.21.

To conclude that there was no dispute regarding the minimum amount, the magistrate court either improperly (1) weighed the competing evidence and accounting offered by both parties, ignoring Moser's testimony disputing the amount owed; or (2) made credibility determinations. As the district court pointed out, these actions are improper at summary judgment. *See Watts v. Lynn*, 125 Idaho 341, 346, 870 P.2d 1300, 1305 (1994) (weighing evidence); *Hilliard v. Murphy Land Co.,*158 Idaho 737, 742, 351 P.3d 1195, 1200 (2015) (making credibility determinations).

The record at summary judgment reveals factual disputes about FCMC's accounting and the amount of debt allegedly owed by Moser. Throughout the proceedings leading up to the magistrate court's grant of partial summary judgment, MRS filed several declarations from Keller explaining her accounting related to Moser's accounts at FCMC and alleging that Moser owes a principal sum of $4,726.99. Keller also attempted to explain why her testimony of the accounting was correct and why Moser's testimony that she owed no amount or a lesser amount was incorrect. A final declaration from Keller included a document signed by Moser authorizing deductions from her payroll account. Keller alleged this authorization was signed at the same 2013 meeting in which Moser allegedly authorized FCMC to transfer Moser's ex-husband's account balance of $843.00 to her payroll account, effectively agreeing to pay her ex-husband's balance through payroll deductions.

Moser responded that MRS had simply showed its "one-sided and self-serving version" of the accounting practices regarding her accounts and alleged several errors in FCMC's billing and Keller's accounting. Among other errors, Moser asserted that FCMC: incorrectly transferred a balance of $843.00 from Moser's ex-husband's account to her account even though her ex-husband was the patient and guarantor for that charge; failed to apply the 50% discount to several of her accounts; and transferred $976.82 "a myriad of times" between her accounts without explanation. Furthermore, Moser argued the alleged amount owed "changed several times throughout the duration of this litigation." As an example, the original balance in the complaint was $4,726.99,

8

compared to newer discovery from FCMC that showed a balance of $3,211.81, a $1,515.18 difference.

In short, FCMC's accounting and the amount of the alleged debt is plainly in dispute. Therefore, we conclude the district court did not err in reversing the magistrate court's partial grant of summary judgment.

**B.** **MRS' failure to ensure relevant transcripts were included in the record on appeal to this Court is fatal to its position that the district court erred in remanding for a retrial on all issues**.

MRS argues that, even if the magistrate court's partial grant of summary judgment was incorrect, the district court erred on intermediate appeal by remanding all issues for retrial. According to MRS, "the issue of whether the [50% discount] was appropriately retracted by FCMC" was already tried and "is a completely separate issue . . . not related at all to the issue determined on summary judgment." The district court determined that the issues the magistrate court improperly resolved through summary judgment and the issues that went to trial were so "intertwined" that all issues were subject to retrial on remand. The district court made this determination with the magistrate court trial and post-trial hearing transcripts before it. We will not address MRS' contention because we have not been provided with transcripts of the magistrate court trial or post-trial proceeding. There was an error in preparation of the record on appeal, but it was incumbent upon MRS to either object to the record prior to settlement or file a motion to augment. Neither was done.

On appeal to this Court, in addition to the documents automatically included in the standard clerk's record, MRS requested a transcript of the intermediate appellate oral argument that took place before the district court and "the entire magistrate court file." Moser did not request any additional documents, records, or transcripts. It is important to recognize that the magistrate court file does not include "transcripts" under Rule 83 of the Idaho Rules of Civil Procedure, which governs appeals of magistrate court decisions. On appeal from the magistrate court, the clerk's record consists of the court file, including minute entries, orders, and exhibits. I.R.C.P. 83(h). Magistrate court transcripts are addressed separately. *See* I.R.C.P. 83(f) and (g). Therefore, MRS' request for the "entire magistrate court file" was insufficient for ensuring the magistrate court trial and post-trial hearing transcripts were included in the record on appeal to this Court.

Having said that, Moser requested the inclusion of trial and post-trial hearing transcripts in her cross-appeal to the district court. The record before us shows the district court reporter filed a

9

notice that the magistrate court trial transcript was lodged with the district court. The record does not contain a notice that the post-trial hearing transcript was lodged, but thirty-one days after the trial transcript was lodged, the district court clerk issued a notice of settling. The notice advised both parties that since both the trial and post-trial hearing transcripts had been lodged with the district court and there were no objections, the transcripts were deemed to be settled. While the record makes it clear that the district court had the trial and post-trial hearing transcripts when it decided this case on intermediate appeal, those transcripts did not make it to this Court.

Rule 28 of the Idaho Appellate Rules governs the preparation of the standard clerk's record in appeals before this Court. The rule provides that in civil cases the "parties are responsible for designating the documents which will comprise the clerk's record on appeal" and lists the pleadings and documents that are automatically included in the standard clerk's record. I.A.R. 28(a), (b)(1). The standard clerk's record includes "[a] list of all exhibits offered, whether or not admitted." I.A.R. 28(b)(1)(J). Any transcripts that were lodged with the district court as part of an intermediate appeal should be lodged on appeal with this Court as "exhibits." I.A.R. 31(a)(2).

Under our rules, the trial and post-trial hearing transcripts that were lodged with the district court on intermediate appeal should have been included in the list of offered exhibits in the standard clerk's record on appeal to this Court and lodged with the Court. They were not. While there clearly was an error in the preparation of the record and lodging of transcripts, the parties are responsible for ensuring that all documents necessary for the appeal are provided to the Court. Rule 29(a) of the Idaho Appellate Rules specifically provides that "[t]he parties shall have 28 days from the date of the service of the transcript and the record within which to file objections to the transcript or the record, including requests for corrections, additions, or deletions." Under this rule, it was incumbent upon MRS to verify that the relevant exhibits were correctly identified in the clerk's standard record on appeal and that the transcripts were provided. Upon noting the omissions, MRS had an obligation to file an objection requesting correction of the record and lodging of the transcripts. When no objections to the clerk's record or transcript are filed within the twenty-eight-day period, they are deemed to be settled. I.A.R. 29. Even after settlement of the record, Rule 30(a) of the Idaho Appellate Rules permits any party, "[a]t any time before the issuance of an opinion," to file a motion to augment the settled clerk's record. MRS did not make any objection to the record or transcript prior to settlement and has not filed a motion to augment.

10

As the party appealing the decision of the district court, MRS "bears the burden of ensuring that this Court is provided a sufficient record for review of the [trial] court's decision." *See Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 897–98, 422 P.3d 1101, 1103–04 (2018) (alteration in original) (quoting *Gibson v. Ada County*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003)). "Error will not be presumed on appeal but must be affirmatively shown on the record by appellant." *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). Here, having the magistrate court trial and post-trial hearing transcripts in the record is necessary to conduct any review of whether the issues at trial were in fact "intertwined" with the issues at summary judgment. The trial and post-trial hearing transcripts are not in the record on appeal before this Court, precluding a sufficient review of the district court's decision on this issue. Therefore, MRS has not met its burden to affirmatively show error in the record. Because this Court will not presume error by the district court, the district court's determination is presumptively correct, and we affirm its decision to remand all issues for retrial.

Because we affirm the district court's conclusion that all issues must be remanded for retrial, the issues regarding best evidence, spoliation, and estoppel are now moot and we decline to reach them on this appeal.

## C.      MRS failed to provide a cogent legal argument in support of its challenge to the district court's award of costs to Moser on intermediate appeal.

In its opening brief on appeal, MRS raised an issue concerning whether the district court erred in awarding Moser her costs on intermediate appeal. However, MRS provided no argument on the issue in its opening or reply brief arguments. Under Idaho Appellate Rule 35, if an issue raised by an appellant is not supported by "any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *see, e.g.*, *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *Harrentsian v. Hill*, 161 Idaho 332, 339, 385 P.3d 887, 894 (2016). Because MRS failed to make a cogent argument explaining how the district court erred in awarding costs to Moser, this Court will not address the issue.

## D.      Neither party is awarded attorney fees on appeal at this time.

Both parties request attorney fees on appeal. MRS requests attorney fees under Idaho Code section 12-120(1) and (3). Moser also requests attorney fees under Idaho Code section 12-120(1).

Idaho Code section 12-120(1) and (3) mandate an award of reasonable attorney fees to the prevailing party in civil actions where certain conditions are met.

However, because we affirm the district court's decision to remand all issues for retrial, this case is not yet resolved. Therefore, at present, there is no prevailing party. "[T]his Court has refused to award attorney's fees" where there is no present prevailing party. *Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017) (citing *Howard v. Perry*, 141 Idaho 139, 143–44, 106 P.3d 465, 469–70 (2005)). Thus, we will not award attorney fees to either party in this appeal at this time. On remand, the magistrate court may award attorney fees and costs for this appeal to the ultimate prevailing party. *See Portfolio Recovery*, 162 Idaho at 236, 395 P.3d at 1269.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's reversal of the magistrate court's partial grant of summary judgment, its order remanding all issues for retrial, and its award of costs to Moser as the prevailing party on intermediate appeal. Costs and attorney fees for this appeal may be awarded by the magistrate court after the prevailing party is determined.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.

12