769 P.2d 553

**KOOTENAI COUNTY PROPERTY ASSOCIATION: Rex Morehouse, Claude A. Stierwalt and Richard Morse, Plaintiffs–Appellants,**

v.

**KOOTENAI COUNTY, a political subdivision of the State of Idaho, Defendant–Respondent.**

No. 17328.

Supreme Court of Idaho.

Feb. 8, 1989.

Lempesis, Anderson, Kroeger & Bennett, Post Falls, for plaintiffs-appellants. Roland D. Watson argued.

Lukins & Annis, Coeur d'Alene, for defendant-respondent. Charles W. Hosack argued.

BAKES, Justice.

Kootenai County Property Association (the association) appeals a summary judgment in favor of Kootenai County (the county). The district court held that the county's $54 solid waste disposal charge on residential dwellings (1) does not unconstitutionally discriminate against property

owners as opposed to actual users, and (2) is a reasonable "fee" for services as authorized by I.C. § 31–4404, and is not an invalid "tax" within the meaning of Article 7, § 5, of the Idaho Constitution. We affirm.

Pursuant to Idaho Code, Title 31, chapter 44, the Kootenai County commissioners ordered the establishment of a solid waste disposal system whereby the county would have the responsibility for providing for all solid waste disposal including landfill sites. To establish, maintain and operate the system, the commissioners also ordered a fee charged. Residential dwellings are charged $54 per year; commercial units and tax exempt property, $3.50 per cubic yard of waste. Certain property is exempt, including: deteriorated residential structures, "structures assessed on occupancy roll," uninhabited mobile homes, and sleeping cabins used solely for storage. Finding that the poor and the elderly generate less waste, the commissioners set lower annual rates for these groups.

The association challenged the $54 residential dwelling charge in the district court on two grounds: first, the association asserted that the charge violates the equal protection clause of the United States Constitution because it unreasonably discriminates against property owners and is not assessed against actual users of the system; and second, the association asserted that the charge conflicts with Idaho Constitution, Article 7, §§ 4 and 5, because it is a general revenue raising tax measure which is not uniformly applied to all property of the same class. The association sought a court order requiring the county to cease collection of the $54 charge.

The county defended the $54 charge, arguing that I.C. § 31–4404 specifically authorized the imposition of a fee and that the $54 charge was a reasonable fee for services, not a tax on residences. The county asserted that the association had presented no evidence to support its claim that the $54 charge was unconstitutionally discriminatory on its face.

On cross motions for summary judgment, the district court ruled in favor of the county. The district court concluded:

"[T]he $54 charge established by County is not a general revenue raising measure. Further, said charge does not discriminate against property owners as opposed to actual users.

"The fees collected for the solid waste disposal systems are related to the necessary and reasonable expenses of that system and are used for such purposes, as provided by statute."

The association presents only two issues on appeal: (1) whether the county's solid waste disposal service must be requested by a prospective beneficiary before a service fee can be collected, and (2) whether the service fee assessed to provide a future benefit, landfill acquisition and preparation, is in reality a tax which does not meet the uniformity requirement. As set forth in our analysis below, we conclude that (1) the county's solid waste disposal service need not be specifically requested before a fee assessment is authorized, and (2) the $54 fee authorized by I.C. § 31–4404 for both present *and* future benefits is not a tax.

In 1970, the Idaho legislature enacted Title 31, chapter 44, "for the purpose of [1] reducing the threat to health posed by uncollected garbage, refuse and scrap; ... [2] maintaining the natural and esthetic setting of our land, water and air resources; ... [3] providing a means for reclamation of otherwise unusable land areas; and ... [4] such other cultural, social, economic and sanitation reasons as may be necessary from time to time." I.C. § 31–4401.

To implement this public policy, the Idaho legislature granted county commissioners the authority "to acquire, establish, maintain and operate such solid waste disposal systems as are necessary and to provide reasonable and convenient access to such disposal systems by all the citizens of the county." I.C. § 31–4402. Furthermore, it is the county commissioners' duty "to acquire sites or facilities, and maintain and operate solid waste disposal systems." I.C. § 31–4403. In order to provide funds

to "acquire sites or facilities, and maintain and operate solid waste disposal systems," I.C. § 31–4404 gives the county commissioners several methods to raise the necessary funds. Among others they may either "[c]ollect fees from the users of the solid waste disposal facilities ...," I.C. § 31–4404(2), or the county commissioners may "[l]evy a tax." I.C. § 31–4404(1).

◼ We now come to the association's first issue: whether a residence dweller can opt out by not requesting the service. The association argues that not all residential property owners use the system or benefit from it, and therefore the mandatory $54 charge on all habitable residences is unreasonable due to the use variance among residences.

Under the ordinance, none can opt out. When the commissioners imposed the $54 charge, they were treating owners of habitable residential dwellings as "users of the [system]." I.C. § 31–4404. Their basic premise was that all humans live in residences and create solid waste, and whether they put it in their own trash cans or someone else's, or on the street, the refuse ultimately ends up in the same place, an authorized county waste disposal site (landfill).[1]

No one suggests that each and every residence generates the same amount of solid waste. Presumably, the precise annual cubic yardage of solid waste from each residence could be painstakingly monitored and determined for each residence by county employees. However, all users would have to pay substantially more to cover the additional salaries of trash monitors. A solid waste disposal system is comparable to a sewer system. Charging a flat residential sewage fee is reasonable even though the actual use (outflow volume) varies somewhat from house to house. *See Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953). The legislature has not imposed exacting rate requirements upon localities for measuring actual residential solid waste disposal or sewage

---

1. Civil and criminal sanctions await those who discard trash improperly. *See* I.C. §§ 31–4405, –4406, –4410.

use. Reasonable approximation is all that is necessary. *Id.*

The association presents no evidence showing that a $54 charge is not reasonably related to the annual benefit which the dwellings derive from the solid waste system. In fact, the commissioners have set lower rates for the poor and elderly based upon studies which demonstrate that these groups generate less solid waste. No charge is assessed on unoccupied buildings.

It is true that the commissioners chose to set the commercial unit charge according to actual use, $3.50 per cubic yard of waste. This choice, however, does not negate the reasonableness of not also using this approach for residential dwellings. While the amount of solid waste generated in residences may vary from house to house, the variation is substantially less significant than it is among businesses. For instance, the multi-storied Coeur d'Alene Hotel would undoubtedly produce significantly more waste than a small roadside diner. It is not irrational for the county to legislate a fixed fee for residences, which have a much less significant variance in waste output, and a cubic yard fee for commercial establishments which vary significantly in the amount of waste produced.[2]

■ We now move to the association's second issue on appeal: that the $54 charge is a "tax" since it would not provide an immediate benefit, but rather would only provide a future benefit, *i.e.*, acquisition and preparation of new landfill sites. We disagree with this premise. We begin our analysis by noting that it is the commissioners' statutory duty "to acquire sites." I.C. § 31–4403. Furthermore, the fee supports not only the acquisition and preparation of new sites, but also the operation of existing landfills. An additional benefit from the solid waste disposal system is that all county residents, including property owners, presently live in a litter-free environment.

■ The association further argues that when the benefit derived is a benefit to the general public, fees to provide the benefit must be considered a tax. A fee, according to the association, is voluntarily paid for specific services while a tax is involuntarily obtained for the general public benefit. However, the legislature, under its police powers, may mandate that citizens must accept certain services, and then require a fee for the receipt of those services. *See, e.g., Schmidt v. Village of Kimberly, supra* (ordinance requiring mandatory sewer hookup and requiring payment of reasonable fee, approved); *City of Glendale v. Trondsen, supra* (ordinance establishing rubbish collection service and requiring payment for service regardless of whether building occupants use the service, approved); I.C. § 42–3201 *et seq.* (legislation authorizing water and sewer district to annex real property into its service area and authorizing tax levies on that property); *Mayer v. Ames*, 133 Ohio St. 458, 14 N.E.2d 617 (1938), *cert. denied*, 305 U.S. 621, 59 S.Ct. 82, 83 L.Ed. 396 (1938) (ordinance requiring vehicle inspection and payment of inspection fee, approved); Cal. Health & Safety Code § 44000 *et seq.* (West 1982) (legislation requiring vehicle inspection and payment of fee for the inspection and necessary service); *see also* McQuillan, *Municipal Corp.* § 24.250, § 31.30a (state has police power to require water, sewage, solid waste disposal service and fee); 7A Am. Jur.2d AUTOMOBILES AND HIGHWAY TRAFFIC § 202 (1980) (state has police power to require vehicle inspection and payment of inspection fee).

The association's distinctions between present and future benefits, specific and general benefits and voluntary and involuntary payments are all unpersuasive. As discussed above, the legislature specifically

---

**2.** In *City of Glendale v. Trondsen,* 48 Cal.2d 93, 308 P.2d 1, (1957) (*en banc*), the California Supreme Court held that a municipality may impose a solid waste disposal charge on residential property owners even through they chose not to use the system. In *Schmidt v. Village of Kimberly, supra,* this Court held that it was neither unreasonable nor unconstitutional to require all buildings to connect to the main sewer line and to cease alternative methods of sewage disposal. The legislative intent here is just as clear: no opting out of the system is allowed.

authorized counties to collect either fees or taxes both for current operations and future acquisition of landfill sites. Imposing a mandatory fee on all owners of habitable residential property is not unreasonable. A fee system whereby every member of the general public would be charged only for his exact contribution of waste presumably could be established, but the system would be cumbersome and perhaps prohibitively expensive to maintain. The law only requires that the fee be reasonably related to the benefit conveyed. *City of Glendale v. Trondsen, supra.*

Our decision today is distinguishable from our recent decision in *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1988), in which we held that I.C. § 63–2201A did not specifically authorize the city of Pocatello to enact an ordinance imposing a street restoration and maintenance fee. In *Brewster* the statute provided: "Notwithstanding any other provision of law, the governing board of any taxing district may impose and cause to be collected fees for those services provided by that district which would otherwise be funded by ad valorem tax revenues." Concerning I.C. § 63–2201A, the Court in *Brewster* stated:

"[N]owhere does it authorize a municipality to impose a *tax* upon users or abutters of public streets. While art. 7, § 6 of the Idaho Constitution permits municipal corporations to impose their own taxes such power is limited by the taxing power authorized by the legislature. *Sun Valley Co. v. City of Sun Valley*, [109 Idaho 424, 708 P.2d 147 (1985)]." *Id.* at 503–04, 768 P.2d at 766–67.

The basis upon which the ordinance in *Brewster* was overturned—that it lacked specific legislative authorization—is not present here. As pointed out above, under I.C. § 31–4404(1) and (2) Kootenai County was authorized to enact either a solid waste disposal tax or a solid waste disposal fee. Kootenai County chose the fee system.

We conclude that the $54 solid waste disposal "fee" for residential dwellings is reasonably related to the services rendered by the county in acquiring, establishing, maintaining and operating its solid waste disposal system. The fee is authorized by I.C. § 31–4404(2) and is not an illegal "tax" in violation of Article 7, §§ 4 and 5, of the Idaho Constitution. Accordingly, the district court is affirmed.

SHEPARD, C.J., HUNTLEY, J., and TOWLES, J. Pro Tem., concur.

JOHNSON, Justice, dissenting.

I dissent from the decision of the majority.

I.C. § 31–4404 grants to a board of county commissioners optional means of "providing funds to acquire sites, facilities, operate and/or maintain solid waste disposal systems." These optional means are:

(1) Levy a tax of not to exceed two (2) mills on the assessed value of property within the county, provided that property located within the corporate limits of any city that is operating and maintaining a solid waste disposal site shall not be levied against for the purposes of the county solid waste disposal system; or,

(2) Collect fees from the users of the solid waste disposal facilities; or,

(3) Finance the solid waste disposal facilities from current revenues; or,

(4) Receive and expend moneys from any other source;

(5) Establish solid waste collection systems where necessary or desirable and provide a method for collection of service fees, among which shall be certification of a special assessment on the property served;

(6) Use any combination of subsections (1), (2), (3), (4), and (5) of this section.

The county chose to fund its solid waste disposal system by imposing "an annual solid waste disposal fee." Arguably, this fee might be characterized as a fee from users of the solid waste disposal facilities under I.C. § 31–4404(2) or a service fee under I.C. § 31–4404(5).

I am unable to accept the characterization of the annual solid waste disposal fee as a fee from "users" under I.C. § 31–4404(2). The fee is charged regardless of whether any solid waste is collected. The ordinance does not require the occu-

pants of residential units to use the solid waste disposal system operated by the county. Therefore, I am unable to construe them to be users. The fee is imposed whether they use the system or not.

I am also unable to accept the characterization of the annual solid waste disposal fee as a "service fee" under I.C. § 31–4404(5). Again, since the ordinance does not require the use of the system, no service is being provided to those who do not choose to use the system.

This case is distinguishable from *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953). In *Schmidt* this Court upheld an ordinance that required owners, tenants or occupants of any property located in the city to connect with the city's sewer system and to cease the use of other means of disposal. Here, not only did the county's ordinance not require use of the county's solid waste disposal system, but also there was no requirement that solid waste could not be disposed of through other means.

My view that the annual solid waste disposal fee is not really a fee, either for users or for service, as authorized under I.C. § 31–4404 is supported by this Court's recent decision in *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1988). There, we said: "In a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." *Id.* at 505, 768 P.2d at 768. Here, there is no direct public service rendered to a particular consumer. The annual solid waste disposal fee is nothing more than a forced contribution by the public at large to meet public needs. Such a contribution in the form of a tax is one of the optional funding means granted to the county under I.C. § 31–4404(1). The county chose to impose a tax, but to call it a fee.

I would reverse the decision of the district court.