67 P.3d 1260

**WATERS GARBAGE, Plaintiff–Appellant,**

v.

**SHOSHONE COUNTY, and its Board of County Commissioners, Jack King, Sherri Krulitz and Jim Vergobbi, Defendants–Respondents.**

No. 27532.

Supreme Court of Idaho.
Boise, February 2003 Term.

April 10, 2003.

Law Office of John J. Rose, Jr., Kellogg, for appellant. John J. Rose, Jr., argued.

Evans, Keane, Kellogg, for respondents. Charles L.A. Cox argued.

EISMANN, Justice.

This is an appeal from a summary judgment holding that Idaho Code § 31–4404(2) authorizes Shoshone County to charge a users fee to county residents who did not use the county solid waste disposal facilities and that the imposition of such fee does not violate the Commerce Clause of the Constitution of the United States. We reverse the holding that the statute authorizes a county to charge a users fee to nonusers of the county solid waste disposal facilities, and we affirm the holding that Shoshone County did not violate the Commerce Clause.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff-appellant Waters Garbage, a partnership consisting of Gary Waters, Joyce Waters, Pat Waters, and Mike Waters, is an Idaho licensed public works contractor engaged in collecting solid waste in Shoshone County, Idaho. It has approximately 2,300 residential customers, 250 commercial customers, and seven to eight industrial customers in the county.

Shoshone County constructed a transfer station to receive solid waste which, after being processed, was shipped to Missoula, Montana, for final disposal at a facility owned by Browning–Ferris Industries (BFI). The County financed the construction of the transfer station by issuing bonds that were to be repaid by an ad valorem tax on all taxable property within the county. In addition, the County imposed a fee (disposal fee) upon all residences and commercial entities in the county. It charged residences a flat monthly disposal fee and commercial entities a disposal fee based upon the amount of solid waste they generated in the prior year. The transfer station also accepts out-of-county waste upon payment of a "tipping fee."

In the past, Waters Garbage took the waste it collected to the County transfer station where it could dispose of the waste without charge. Sometime prior to May 5, 1999, Waters Garbage constructed its own transfer station to process solid waste and obtained approval from the Panhandle Health District to operate it. On May 5, 1999, however, the Shoshone County Commissioners refused to give County approval to the Panhandle Health District for Waters Garbage to operate its transfer station. On September 8, 1999, Waters Garbage obtained a court order requiring the County to issue that approval, and it did so on September 10, 1999.

Upon the completion of its transfer station, Waters Garbage no longer intended to use the County transfer station. After processing the waste in its own transfer station, Waters Garbage intended to ship that waste to the BFI facility in Missoula. In May 1997, Waters Garbage asked the County Commissioners to exempt its customers from paying the disposal fee. According to Waters Garbage, its customers refused to pay both Waters Garbage and the County for the transfer and disposal of solid waste. The County Commissioners refused to do so, and they indicated that the County would continue to charge Waters Garbage's commercial customers based upon their prior use even if they certified that they would not be dumping any solid waste at the County transfer station.

On December 26, 1997, Waters Garbage filed this action against the County. It ultimately filed a second amended complaint in which it sought a declaratory judgment that Idaho Code § 31–4401 did not authorize the County to charge a disposal fee to non-users of the County transfer station; a declaratory judgment that the County unconstitutionally interfered with interstate commerce when it

charged a disposal fee to non-users of the County transfer station; an injunction prohibiting the County from charging non-users a disposal fee; and damages for interfering with Waters Garbage's ability to engage in interstate commerce. On May 10, 2000, Waters Garbage filed a motion for summary judgment on two issues: (1) whether the County interfered with interstate commerce by imposing the disposal fee on non-users of the County transfer station; and (2) whether Idaho Code § 31–4401 grants the County authority to charge non-users the disposal fee. After hearing oral argument, the district court entered a memorandum opinion and order on August 21, 2000, granting summary judgment on behalf of Shoshone County.

Waters Garbage filed a motion for reconsideration, which the district court denied on December 20, 2000, after considering the parties' oral arguments. Waters Garbage then filed another motion asking the district court to decide certain issues and clarify others. It supported that motion with supplemental affidavits. That motion was considered by the district court based upon the briefs submitted by both parties. At the request of the County, the district court struck Waters Garbage's supplemental affidavits because they did not contain any statements or documentary evidence that was not known, or could not reasonably have been discovered, when Waters Garbage moved for summary judgment. The district court held that no issues remained to be determined and that Waters Garbage had failed to provide the court with a copy of the county ordinances upon which it based its claim that other issues needed to be clarified. The district court entered its order denying the motion on March 29, 2001. On the same date, judgment was entered dismissing this action with prejudice. Waters Garbage then timely appealed.

## II. ISSUES ON APPEAL

A. Does Idaho Code § 31–4401 authorize Shoshone County to collect a solid waste disposal fee from county residents and commercial entities that did not use the county solid waste disposal system?

B. Did Shoshone County violate the Commerce Clause of the federal constitution when it imposed a solid waste disposal fee upon county residents and commercial entities that did not use the county solid waste disposal system?

C. Is Shoshone County entitled to an award of attorney fees on appeal?

## III. ANALYSIS

A. **Does Idaho Code § 31–4401 Authorize Shoshone County to Collect a Solid Waste Disposal Fee from County Residents and Commercial Entities that Did Not Use the County Solid Waste Disposal System?**

In count one of its second amended complaint, Waters Garbage sought a declaratory judgment that Idaho Code § 31–4401(2) did not permit Shoshone County to charge a user fee to County residents who did not use the County solid waste disposal facilities. In count three it sought an injunction prohibiting the County from collecting that fee from non-users of the County facilities. The district court ruled that Idaho Code § 31–4401(2) authorized Shoshone County to collect a solid waste disposal fee from all county residents and all commercial entities in the county, regardless of whether they actually used the county solid waste disposal system. We exercise free review over the construction of a statute. *Lopez v. State, Industrial Special Indemnity Fund,* 136 Idaho 174, 30 P.3d 952 (2001). If the statutory language is unambiguous, we merely apply the statute as written. *Id.* If it is ambiguous, then we attempt to ascertain the legislative intent. *Id.* When doing so, we may examine the language used, the reasonableness of proposed interpretations, and the policy behind the statute. *Id.*

Idaho Code § 31–4404 provides as follows:

**Funding of operations.**—For the purpose of providing funds to acquire sites, facilities, operate and/or maintain solid waste disposal systems, a board of county commissioners may in addition to the au-

thority granted in sections 31–4402 and 31–4403, Idaho Code:

(1) Levy a tax of not to exceed four hundredths percent (.04%) of the market value for assessment purposes on all taxable property within the county, provided that property located within the corporate limits of any city that is operating and maintaining a solid waste disposal site shall not be levied against for the purposes of the county solid waste disposal system; or,

(2) Collect fees from the users of the solid waste disposal facilities; or,

(3) Finance the solid waste disposal facilities from current revenues; or,

(4) Receive and expend moneys from any other source;

(5) Establish solid waste collection systems where necessary or desirable and provide a method for collection of service fees, among which shall be certification of a special assessment on the property served;

(6) Use any combination of subsections (1), (2), (3), (4), and (5) of this section.

The issue is the meaning of the phrase "the users of the solid waste disposal facilities."

■ When construing a statute, the words used must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 25 P.3d 850 (2001). The word "user" means: "1. The exercise or employment of a right or property <the neighbor argued that an easement arose by his continuous user over the last 15 years> .... 2. Someone who uses a thing <the stapler's last user did not put it away>." BLACK'S LAW DICTIONARY 1542 (7th ed.1999). Giving the word "users" its plain, usual, and ordinary meaning, the "users of the solid waste disposal facilities" means those who actually use the facilities. Nonusers—those who fail or neglect to use the facilities—would not be "users" as that term is normally used. The legislature knows how to draft language authorizing the charging of fees to prospective users in addition to actual users. For example, Idaho Code § 50–2708(1)(*l*) authorizes public corporations to "collect fees or charges from users or prospective users of industrial development facilities to recover actual or anticipated administrative costs."

The provisions of subsection (1) of Idaho Code § 31–4401 also indicate that "users" means those who actually use the solid waste disposal facilities. That portion of the statute authorizes the county commissioners to levy an ad valorem tax upon all taxable property within the county for the purposes of acquiring sites and/or facilities and operating and/or maintaining solid waste disposal systems. It contains a proviso, however, that "property located within the corporate limits of any city that is operating and maintaining a solid waste disposal site shall not be levied against for the purposes of the county solid waste disposal system." The proviso is obviously based upon the assumption that those within the corporate limits of a city that is operating and maintaining a solid waste disposal site would not normally be using the county solid waste disposal site. If they did use it, however, the county could charge a user fee permitted by subsection (2) of the statute.

The district court relied upon *Kootenai County Property Association v. Kootenai County*, 115 Idaho 676, 769 P.2d 553 (1989), in ruling that nonusers of the county waste disposal system were required to pay the disposal fee. In that case, we upheld a county ordinance that imposed an annual solid waste disposal fee upon all residential dwellings in the county and prohibited them from opting out by not requesting the waste disposal service. When doing so, we noted that the county commissioners' basic premise in adopting the ordinance was "that all humans live in residences and create solid waste, and whether they put it in their own trash cans or someone else's, or on the street, the refuse ultimately ends up in the same place, an authorized county waste disposal site (landfill)." 115 Idaho at 678, 769 P.2d at 556.

That rationale does not apply in the instant case. Waters Garbage has its own solid waste disposal facilities that are separate from those owned by the county. The solid waste collected by Waters Garbage will be taken to its own transfer station, where it would be processed and then shipped to the

BFI facility in Montana. None of that waste will go to the County transfer station or to a County landfill. In the event that Waters Garbage attempted to deliver any waste it collected to the county transfer station, the County could impose the appropriate charge for doing so. It could do likewise if any customers of Waters Garbage attempted to deliver waste to the County facility. We hold that the district court erred in holding that Idaho Code § 31–4401(2) permits the county to charge fees to the nonusers of the county solid waste disposal facilities.

**B. Did Shoshone County Violate the Commerce Clause of the Federal Constitution When It Imposed a Solid Waste Disposal Fee Upon County Residents and Commercial Entities that Did Not Use the County Solid Waste Disposal System?**

■ In count two of its second amended complaint, Waters Garbage sought a declaratory judgment holding that Shoshone County violated the Commerce Clause of the Constitution of the United States by charging a solid waste user fee to non-users of the County solid waste disposal facilities. In count four, Waters Garbage sought damages for that alleged deprivation of its civil rights.

The county ordinance is not included in the record on appeal. There is no contention that the ordinance requires that all solid waste generated or brought into the county be processed at a designated transfer station, as was found unconstitutional in *C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). There is no contention that the ordinance prohibits importing solid waste collected or generated outside the state, as was found unconstitutional in *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Department of Natural Resources*, 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992). Likewise, there is no contention that the County charges higher fees to process waste generated outside the state than for waste generated within the state, as was found unconstitutional in *Oregon Waste Systems v. Department of Environmental Quality*, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). Rather, Waters

Garbage argues that the practical effect of the disposal fees is that processing will occur at the County transfer station because residents of Shoshone County will choose to use the County transfer station rather than pay another entity, such as Waters Garbage, to dispose of their solid waste. That would not violate the Commerce Clause, however.

In *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), Maryland enacted a plan designed to encourage the processing of abandoned vehicles into scrap metal. The statute required Maryland junkyards that accumulated vehicles for the resale of spare parts to obtain a license and pay a recurring fine for any vehicle of a specified age that was retained in the junkyard for more than one year. It also provided that Maryland would pay a "bounty" for the destruction, by a licensed processor, of any vehicle formerly titled in Maryland. The statute created a special category of vehicles called "hulks," which were inoperable vehicles that were over eight years old. In order to be paid the bounty for processing a hulk, the processor had to submit certain paperwork to the state. The documentation required of a processor whose plant was located in Maryland differed from that of a processor whose plant was located outside Maryland. A Maryland processor merely had to submit an indemnity agreement signed by the person who delivered the hulk to the processor. A non-Maryland processor, however, had to submit a certificate of title, a police certificate vesting title, a bill of sale from a police auction, or, in the case of licensed wreckers only, a Wrecker's Certificate. The practical effect of this difference in required documentation was to reduce the movement of hulks to processors located outside of Maryland. Those supplying the hulks chose to take their hulks to Maryland processors rather than out-of-state processors because of the lessened documentation requirement for Maryland processors.

The Supreme Court acknowledged that under the Maryland statutes, hulks will tend to be processed inside Maryland rather than flowing to out-of-state processors. In holding that this did not violate the Commerce Clause, the Court stated:

But no trade barrier of the type forbidden by the Commerce Clause, and involved in previous cases, impedes their movement out of State. They remain within Maryland in response to market forces, including that exerted by money from the State. Nothing in the purposes animating the Commerce Clause prohibits a State, in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others. 426 U.S. at 809–10, 96 S.Ct. 2488.

Relying upon *Sanifill, Inc. v. Kandiyohi County*, 559 N.W.2d 111 (Minn.Ct.App. 1997), Waters Garbage also argues that the disposal fees violated the Commerce Clause because they subsidized the Shoshone County transfer station, thereby making out-of-state disposal facilities less able to compete with the County facility. Direct subsidization does not ordinarily run afoul of the Commerce Clause, however. *C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994); *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). Indeed, to so hold would prohibit states and their political subdivisions from providing any services supported by tax dollars if doing so would make out-of-state entities less able to compete with the state or political subdivision in providing such services. We affirm the decision of the district court that Waters Garbage has failed to show a violation of the Commerce Clause.

## C. Is Shoshone County Entitled to an Award of Attorney Fees on Appeal?

Shoshone County requests an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees will be awarded under that statute only when this Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Win of Mich., Inc. v. Yreka United, Inc.*, 137 Idaho 747, 53 P.3d 330 (2002). Where Waters Garbage prevailed in part on the appeal, it was not brought or pursued frivolously, unreasonably, or without foundation. Therefore, we will not award attorney fees to Shoshone County on appeal.

## IV.  CONCLUSION

We affirm that portion of the judgment dismissing counts two and four of Waters Garbage's second amended complaint. We reverse that portion of the judgment dismissing count one of the second amended complaint and vacate that portion of the judgment dismissing count three. We remand this case for further proceedings consistent with this opinion. Because both parties prevailed in part, we do not award costs on appeal.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.