## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38116

LEWISTON INDEPENDENT SCHOOL
DISTRICT #1, an Idaho body politic and
corporate; LEWIS-CLARK STATE
COLLEGE, an Idaho body politic and
corporate; NEZ PERCE COUNTY, a legal
subdivision of the State of Idaho; PORT OF
LEWISTON, a publicly created port
district within Nez Perce County, Idaho;
and LEWISTON ORCHARDS
IRRIGATION DISTRICT, a duly
organized irrigation district within Nez
Perce County, Idaho,

    Plaintiffs-Respondents,

v.

CITY OF LEWISTON, an Idaho municipal
corporation,

    Defendant-Appellant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Moscow, September 2011 Term

2011 Opinion No. 113

Filed: November 7, 2011

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Second Judicial District of the
State of Idaho, Nez Perce County. Hon. John H. Bradbury, District
Judge.

The judgment of the district court is <u>affirmed</u>. Costs are awarded to
respondents. No attorney's fees are awarded.

Lewiston City Attorney, Lewiston, for appellant. Jamie C.
Shropshire argued.

Creason, Moore, Dokken & Geidle, PLLC, Lewiston, for respondents.
Theodore O. Creason and Todd D. Geidl argued.

---

W. JONES, Justice

### I. NATURE OF THE CASE

The City of Lewiston ("City") enacted Ordinance No. 4512, creating a stormwater utility
and stormwater fee for the operation and maintenance of the City's stormwater system. Five

1

government entities[1] ("Entities") subject to the stormwater fee brought suit seeking a declaratory judgment that the fee was an unconstitutional tax requiring authorization by the Legislature. The Entities thereafter filed their motion for summary judgment. The City filed its cross-motion for summary judgment asserting that the stormwater fee was authorized pursuant to the City's police powers, the Revenue Bond Act, the Local Improvement District Code, and various other provisions of the Idaho Code. Relying primarily on *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1988), and finding no legislative authorization for the stormwater fee,[2] the district court granted summary judgment in favor of the Entities holding that the stormwater fee was an unconstitutional tax requiring authorization by the Legislature. In rendering its decision, the district court never addressed the Entities' assertion of immunity. The City filed an appeal of the district court's decision granting summary judgment in favor of the Entities. Because the stormwater fee is an unauthorized tax, the district court did not err in granting summary judgment in favor of the Entities.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The City's stormwater system consists of stormwater pipes, curbs, gutters, drainage ditches, detention ponds, and stormwater treatment facilities. In order to eliminate non-stormwater and pollutant discharge, the Clean Water Act, 33 U.S.C. § 1342(p)(1)–(6) (2008) requires municipalities discharging stormwater into the receiving waters of the United States to obtain a National Pollutant Discharge Elimination System permit ("NPDES permit"). The City's NPDES draft permit required it to undertake comprehensive management of its stormwater system to reduce pollutant loads from entering the receiving waters of the United States.

In response to these regulatory mandates, on August 11, 2008, the Lewiston City Council ("Council") enacted Ordinance No. 4512 ("Ordinance") creating the City's Stormwater Utility ("Stormwater Utility") and authorizing the imposition of a Stormwater Utility fee ("stormwater fee") to fund the Stormwater Utility's functions. Citing its police powers,[3] the Ordinance asserts that the purposes of the Stormwater Utility and the stormwater fee were to reduce the effects of

---

[1] The five government entities who brought suit are Lewiston Independent School District # 1, Lewis-Clark State College, Nez Perce County, Port of Lewiston, and Lewiston Orchards Irrigation District.

[2] In regard to the City's cross-motion for summary judgment, the district court held that there was no express or implied statutory or constitutional authority granting the City the power to tax in this context. The district court held that the City may only exercise those powers granted to it by statute or the Idaho Constitution. *See Caesar v. State*, 101 Idaho 158, 610 P.2d 517 (1980).

[3] Ordinance 4512 also cites "I.C. 50-1027 et seq., I.C. 50-304, I.C. 50-315, I.C. 50-332, and I.C. 50-33" as authority in establishing the Stormwater Utility.

2

stormwater runoff from impervious surfaces in the City, including reducing property damage, preventing the flow of pollutants, and preserving the integrity of streets. The Ordinance also permitted the City to free-up $700,000 from its Street Maintenance Program[4] by rolling part of its street sweeping and stormwater maintenance budget into the Stormwater Utility.

Recognizing that owners and possessors of property with impervious surfaces contribute to the total run-off, the Ordinance provides that "[t]he owner, agent, occupant, lessee, tenant, contract purchaser, or other person having possession or control of property or supervision of an improvement on the property" ("owners") are responsible for the stormwater fee. The rates provided in the Ordinance vary according to whether the property is classified as residential or non-residential. Residential property owners pay the same rate based on the number of "equivalent residential units" ("ERUs") that they own. An ERU is residential property with an impervious surface area of 4,000 square feet. Non-residential property owners' fees vary according to a sliding scale in which the number of ERUs is calculated based on a site-specific quantification of impervious surfaces utilizing aerial photography or personal observation.

As a result of the rate structures applying to all owners of property, there are many properties with impervious surfaces whose owners are charged by the Stormwater Utility, but whose runoff does not enter the stormwater drain because they have their own stormwater systems or because their neighborhoods are not connected to the stormwater system.[5] The only exemptions from the stormwater fee are if the property is less than 2000 square feet as identified in the Nez Perce County property database, the property is classified as undeveloped, or the owner qualifies for "circuit breaker" status.[6]

In addition to the rates, the Ordinance provides an organization structure[7] for the Stormwater Utility and an appeal process by which a landowner may challenge a fee as

---

[4] Thomas Dechert, Stormwater Program Coordinator, uses the term "street division" and "transportation division" interchangeably in describing the Street Program, Street Maintenance Department, and the Street Maintenance Department's budget.

[5] The Stormwater Business Plan composed by the City indicates "that the number of ERUs actually discharging to the City's stormwater system is probably at least 30% less than the totals given" and that "as much as 20% of the non-residential ERUs might be public or institutional property that could be exempted from fees."

[6] Circuit breaker status refers to a term used by the Idaho State Tax Commission for its Property Tax Reduction Program, which reduces property taxes for qualified applicants based on age and income, among other factors. *2011 Property Tax Reduction Program*, Idaho Tax Commission, 2011, http://tax.idaho.gov/pubs/EBR00135_11-17-2010.pdf.

[7] Although Ordinance 4512 purports to establish the Stormwater Utility to finance stormwater maintenance, it is unclear whether the Council has adopted a distinct Stormwater Utility structure separate from the Street Maintenance Department.

unwarranted or based on improper calculation of impervious surfaces or other aspect of the rate structure. The Ordinance also provides an enterprise fund in which all fees would be collected and separated from the general revenue. The revenues collected for the enterprise fund are to be used only for payment of the costs of "maintenance, operation, upkeep and repair and capital outlay of the stormwater system, including the payment of bonds issued to finance such capital outlay."[8]

To implement the Ordinance, the Council adopted Resolution No. 2008-55 on October 27, 2008. Resolution 2008-55 set the base rate charge per ERU at $6 and assigned all residential parcels a value of one ERU to be paid at 100% of the base rate. The Resolution also phased-in the charge over a three year period, assessing 50% of the fee the first year (October 1, 2008 to September 30, 2009), 75% of the fee the second year (October 1, 2009 to September 30, 2010), and 100% of the fee after October 1, 2010.

The Council later adopted Resolution No. 2009-68 amending Resolution No. 2008-55 and extending the 50% phase-in rate for an additional year (from October 1, 2009 through September 30, 2010) and limiting the expenditure of "[a]ll Storm Water Utility Fees collected . . . to [the] maint[enance], operat[ion] or enhance[ment] [of] the Storm Water Utility system of the City of Lewiston."

In practice, the revenues generated from the stormwater fees are divided between the City's street sweeping and maintenance of the stormwater system.[9] The remaining 10% to 15% of the budget is allocated to NPDES compliance. As per its maintenance of the stormwater system, the City currently uses or intends on using stormwater utility revenue for what it defines as "stormwater activities,"[10] including street surface repair, winter sanding and rock cleanup on roads, seal coat cleanup, street sweep training and equipment, shoulder guard curb work, curb

---

[8] In practice, stormwater fees are commingled with the City's general funds in the City's primary checking account.

[9] As per the City's Stormwater Utility Business Plan, the Stormwater Utility has a $1.201 million yearly base cost. In estimating how the revenues from the stormwater fee are allocated, Thomas Dechert, Stormwater Program Coordinator, stated that $90,000 to $100,000 is allocated for NPDES compliance; $332,470 is allocated to street sweeping, debris cleanup, and pollution control; and $301,750 is allocated to the City's stormwater system operations. This estimate was based off of the City's 2009 budget.

[10] In generating his stormwater activity list, Keith Bingman, Street Maintenance Manager, makes an ad hoc determination as to what constitutes interdepartmental stormwater activities assessing whether the activity is "storm related" or "stormwater maintenance related" and then bills the Stormwater Utility for work done by the Street Maintenance Department. Thus, as Bingman related, in referring to his budgeting methodology, if a tree limb blows onto the street, it is billed as street maintenance; if, on the other hand, the limb washes onto the street, it is billed to the Stormwater Utility. In this sense, anything related to the cleaning and maintenance of streets that affects the quality of the City's stormwater, including street sweeping, has the potential to be deemed "stormwater maintenance related."

and gutter patching, trash and debris clean up, road shoulder grading and ditching, weed control clean up, oil spill clean-up, tree and limb removal, hauling debris, and other interdepartmental charges assessed by the Street Maintenance Department and other departments and divisions.[11] Before the adoption of the Ordinance, most of these activities were paid out of the general revenue fund as part of the Street Maintenance Department's budget.

The City began billing its residential and non-residential property owners for stormwater fees on October 1, 2008. The Entities filed suit on September 28, 2009, seeking a declaratory judgment that the City acted outside of its constitutional authority in assessing an unauthorized tax, injunctive relief, a writ of prohibition, and a writ of mandate to stop the City from collecting the stormwater fee. The Entities thereafter filed their motion for summary judgment on April 2, 2010. The City filed its cross-motion for summary judgment on April 30, 2010, contending that the stormwater fee is authorized pursuant to the City's police powers, the Revenue Bond Act, the Local Improvement District Code, and various other statutory provisions under Title 50 of the Idaho Code. The district court issued its Memorandum Decision and Order on July 16, 2010, which granted summary judgment for the Entities' declaratory judgment claim and denied the City's cross-motion for summary judgment. The district court, thereafter, issued its Order for Entry of Final Judgment on the declaratory judgment claim on August 23, 2010.

## III. ISSUE ON APPEAL

1.    Whether the district court erred in granting the Entities' summary judgment motion alleging that the City's stormwater fee is an unauthorized tax?

## IV. STANDARD OF REVIEW

When this Court reviews a district court's grant of summary judgment, it uses the same standard properly employed by the district court originally ruling on the motion. *Lowder v. Minidoka Cnty. Joint Sch. Dist. No. 331*, 132 Idaho 834, 837, 979 P.2d 1192, 1195 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). This Court "liberally construe[s] the record in a light most favorable to the party opposing the motion, drawing all reasonable

---

[11] In the future, the City asserts that the stormwater fee also will be used to fund the City's Capital Improvement Plan, which will be used to update various drainage channels and pipes, rebuild streets, build and rebuild stormwater systems, build detention and retention ponds, among others. Some stormwater basins in the City will not receive any capital improvements.

inferences in favor of that party." *DBSI/TRI V v. Bender*, 130 Idaho 796, 801–02, 948 P.2d 151, 156–57 (1997). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005). "If the record contains conflicting inferences or if reasonable minds might reach different conclusions, then the district court's order granting summary judgment must be reversed." *DBSI/TRI V*, 130 Idaho at 802, 948 P.2d at 157. "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Borley v. Smith*, 149 Idaho 171, 176, 233 P.3d 102, 107 (2010) (quoting *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)).

## V. ANALYSIS

### A. The Stormwater Fee Is an Unauthorized Tax, Not Reasonably Related to a Regulatory Purpose

The Idaho Constitution provides that "[a]ny county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws." IDAHO CONST. art. XII, § 2. Police powers consist of government conduct that has "for its object the public health, safety, morality or welfare." *Potts Constr. Co. v. N. Kootenai Water Dist.*, 141 Idaho 678, 681, 116 P.3d 8, 11 (2005) (quoting 6A Eugene McQuillin, *The Law of Municipal Corporations, Police Powers* § 24.28 (3d ed. 1997)). A municipality may collect fees considered incidental to regulation and enacted pursuant to the municipality's police powers. *See Brewster*, 115 Idaho at 504, 768 P.2d at 767; *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 742–43, 890 P.2d 326, 328–29 (1995). "[A] fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." *Brewster*, 115 Idaho at 505, 768 P.2d at 768. A fee's purpose is regulation, while taxes are primarily revenue raising measures. *BHA Invs., Inc. v. State*, 138 Idaho 348, 352–53, 63 P.3d 474, 478–79 (2003) (citing *Brewster*, 115 Idaho at 504–05, 768 P.2d at 767–68). "If municipal regulations are to be held validly enacted under the police power, funds generated thereby must bear some reasonable relationship to the cost of enforcing the regulation." *Brewster*, 115 Idaho at 504, 768 P.2d at 767 (citing *State v. Nelson*, 36 Idaho 713, 213 P. 358 (1923)). Legislative authorization is required for a municipal corporation's taxes on the general public. *See* IDAHO CONST. art. VII, § 6; *see also Brewster*, 115 Idaho at 504, 768 P.2d at 767. The Idaho Constitution prohibits a municipality from imposing a tax on other governmental entities. *See*

6

IDAHO CONST. art. VII, § 4 (providing that "[t]he property of . . . the state, counties, towns, cities, villages, school districts, and other municipal corporations and public libraries shall be exempt from taxation . . ..").[12]

In *Loomis v. City of Hailey*, 119 Idaho 434, 807 P.2d 1272 (1991), this Court articulated a two-part test in determining whether a fee by a municipal corporation is a disguised tax, not reasonably related to a regulatory purpose under *Brewster*. "First, [this Court] . . . must determine whether the . . . fee constitutes an impermissible tax. Secondly, [this Court] . . . must determine whether the . . . fee is appropriately and reasonably assessed."[13] *Id.* at 437, 807 P.2d at 1275. The burden falls on the party challenging the exercise of a police power to show that it is in conflict with the general laws of the state or clearly unreasonable or arbitrary. *See Potts Constr. Co.*, 141 Idaho at 682, 116 P.3d at 12; *Plummer v. City of Fruitland*, 139 Idaho 810, 813, 87 P.3d 297, 300 (2004); *Sanchez v. City of Caldwell*, 135 Idaho 465, 468, 20 P.3d 1, 4 (2001) (holding that whether or not an ordinance is unreasonable or arbitrary is a question of law).

*1.     The Stormwater Fee Is a Tax*

It is apparent that Ordinance 4512[14] is a revenue generating tax created to benefit the general public by charging all property owners for the privilege of using the City's preexisting stormwater system, regardless of whether they are using the stormwater system or not. *See Brewster*, 115 Idaho at 503–04, 768 P.2d at 766–67. By its terms, the Ordinance states that its purpose is to "provide[] the funding necessary to enable on-going maintenance, operation, regulation, water quality management and improvement of the [stormwater] system . . .." Ordinance 4512 only provides for the creation and administration of the Stormwater Utility, a method of assessing residential and non-residential rates, an enterprise fund, and a process for

---

[12] Although the Idaho Constitution prohibits a municipality from imposing a tax on other government entities, a municipality may charge a fee on government entities so long as it is specifically authorized by the Idaho Constitution or the Legislature. *See Brewster*, 115 Idaho at 503–05, 768 P.2d at 766–68; *Caesar*, 101 Idaho at 160, 610 P.2d at 519 ("a municipal corporation, as a creature of the state, possesses and exercises only those powers expressly or impliedly granted to it").

[13] In interpreting the *Loomis* test, *Idaho Building Contractors Ass'n*, 126 Idaho at 743, 890 P.2d at 329, provides guidance:

> Under the first step of the analysis, [this Court must] . . . consider whether, on its face, the . . . fee is a tax or a regulation. If it at least appears to be a regulation, we then reach the question of whether or not it is reasonably related to the regulated activity. If it is not reasonably related to the regulation, then it is purely a revenue raising assessment, and once again is not permissible without a specific legislative enactment.

[14] City of Coeur d'Alene has a stormwater utility. Ordinance 4512 is based on City of Coeur d'Alene's Ordinance.

appeal and exemption. Thus, by its terms, the Ordinance is purely concerned with revenue generation. *Id.*

The planning process for Ordinance 4512 further highlights this objective. In referring to the Council's motives for the stormwater fee, Thomas Dechert, Stormwater Program Coordinator, who was part of the planning process for the Stormwater Utility, elaborated that the stormwater fee is like "police services" in that it "benefits the public generally." Dechert's proposal to the Council for the stormwater system asserts the main virtue of the stormwater fee as providing a solution for the Street Maintenance Department's funding concerns by freeing up $700,000 annually in general tax revenue.[15] Literature composed by the City for public dissemination posed in question and answer format further extols this theme. The document posits:

> All of my stormwater stays on my lot. Why should I have to pay more money now? The fee will go towards fixing, building, and maintaining the stormwater system that benefits the whole City. Just like streets or the wastewater system, it's part of what we pay for as a community. We want to ensure that stormwater discharged to the rivers and creeks from the City meets water quality standards to maintain the fish and wildlife we value.

This document strongly suggests that even the City recognizes that this fee is a tax to provide community services to the general public.

Ordinance 4512 contains no provisions of regulation and is not incidental to regulation. As a result, the stormwater fee is indistinguishable from the street restoration and maintenance fee in *Brewster*, 115 Idaho at 502–05, 768 P.2d at 765–68, and the development impact fee in *Idaho Building Contractors Ass'n*, 126 Idaho at 741–44, 890 P.2d at 327–30, both of which this Court characterized as unauthorized taxes. Ordinance 4512 contains no provision purporting to control activities relating to stormwater regulation, such as stormwater pollution control or illicit discharge. Furthermore, the City cannot point to any statute authorizing the imposition of the stormwater fee besides its reference to the Revenue Bond Act[16] and the Clean Water Act, 33 U.S.C. § 1342(p)(1)–(6).[17]

The Stormwater Utility provides no product and renders no service based on user consumption of a commodity. *See Brewster*, 115 Idaho at 505, 768 P.2d at 768. The City has no

---

[15] This figure includes $280,016 in street sweeping costs and $228,787 in stormwater operations and maintenance costs.

[16] The City concedes the Revenue Bond Act is inapplicable because there were no revenue bonds issued.

[17] The NPDES draft permit does not mandate the creation of the Stormwater Utility. Regardless, only 10% to 15% of the stormwater fee is used for NPDES compliance.

involvement with the flow or removal of stormwater on private property. The essence of the charge imposed is for the privileges of having a pollutant free stormwater system and clean streets. This benefit is no different from the privilege shared by the general public, much like the public's use of city streets or police and firefighter services. *See id.* at 504–05, 768 P.2d at 767–68 (holding that "a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs"). Thus, the fee serves the purpose of providing funding for public services at large previously funded out of the City's general tax revenues, not to the individual assessed. *See id.*; *see also Idaho Bldg. Contractors Ass'n*, 126 Idaho at 744, 890 P.2d at 330. As in *Brewster*, the stormwater fee is "not dissimilar from a tax imposed for the privilege of owning property within the municipal limits of [the City]." 115 Idaho at 504, 768 P.2d at 767.

The administration of the Stormwater Utility further suggests that the stormwater fee is a tax used for the non-regulatory function of cleaning, maintaining, and expanding the City's streets and stormwater infrastructure. *Brewster*, 115 Idaho 504–05, 768 P.2d at 767–68. Unlike water, sewer, or electrical service fees, which are based on user consumption of a particular commodity, the stormwater fee is assessed on those who do not use the Stormwater Utility. *Id.* at 505, 768 P.2d at 768. The City is charging homeowners based on the extent of impervious surfaces on their property reasoning that this method equitably spreads the cost of maintaining the stormwater system to those who contribute non-stormwater and pollutants to the system. But, the City concedes that some of the individuals who are assessed the stormwater fee have their own private stormwater systems or are not connected to the stormwater system. The City's Stormwater Utility Business Plan estimates "that the number of ERUs actually discharging to the City's stormwater system is probably at least 30% less than the totals given" and that "as much as 20% of the non-residential ERUs might be public or institutional property that could be exempted from fees." The Stormwater Utility Business Plan also relates that "30% of the ERUs might qualify for credits, immediately." There is no evidence of how much stormwater the fee payers actually contribute to the stormwater system. The ERU impervious surface area rate structure does not account for actual use of the stormwater system, which is understandable because the City plays no part in water flowing over properties unlike garbage, water, electrical, and sewer services. *Id.* at 504–05, 768 P.2d at 767–68.

Furthermore, the stormwater activities that the City's Street Maintenance Department bills to the Stormwater Utility are broad and seem to incorporate any service that Keith Bingman, Street Maintenance Manager, declares to be "storm related" or "stormwater maintenance related .

9

. .." Keith Bingman's stormwater activity list suggests that the City has shifted its Street Maintenance Program into the Stormwater Utility in order to free up its general revenues. Much like its method of budgeting and accounting, the Stormwater Utility has an ad hoc structure, which looks a lot like the Street Maintenance Department. As a result, there is no sure means to control how the stormwater revenue is spent contrary to *Idaho Building Contractors Ass'n*, 126 Idaho at 743, 890 P.2d at 329.[18] In addition, the reality of the enterprise fund is that these revenues are not segregated; instead, they are kept in a single checking account from which the City draws its general funds. *See Potts Constr. Co.*, 141 Idaho at 681, 116 P.3d at 11; *Loomis*, 119 Idaho at 443, 807 P.2d at 1281.

2. *This Court Does Not Need to Address Whether the Stormwater Fee Is Reasonably Related to a Regulatory Purpose Under Brewster Because the Stormwater Fee Is a Tax with No Regulatory Purpose*

The City argues that the stormwater fee is reasonably related to the regulated activity. Because the Ordinance, no matter how rationally and reasonably drafted, imposes a tax and not a regulatory fee, this Court "[need] not ever reach the second part of the *Loomis* test set forth above." *Idaho Bldg. Contractors Ass'n*, 126 Idaho at 745, 890 P.2d at 331. "The reasonableness of the ordinance simply never becomes an issue." *Id.*

3. *The Facts in* Waters Garbage*,* Kootenai County*, and* Loomis *Are Distinguishable Because They Involved Interpretations of Statutes*

The Entities' reliance on *Waters Garbage v. Shoshone County*, 138 Idaho 648, 650–52, 67 P.3d 1260, 1262–64 (2003), is inapposite. *Waters Garbage* dealt primarily with statutory construction of waste disposal fees under I.C. § 31-4401. *Id.* Applying the plain meaning of the statute, this Court held that waste disposal fees under I.C. § 31-4401 must be tied to the provision of an actual service. *See id.* at 651–52, 67 P.3d 1263–64. Here, there is no applicable statute to interpret.

Similarly, the City's reliance on *Kootenai County Property Ass'n v. Kootenai County*, 115 Idaho 676, 769 P.2d 553 (1989), is equally unconvincing. The facts in *Kootenai County* are distinguishable from this case. In *Kootenai County*, this Court held that a waste

---

[18] In *Idaho Building Contractors Ass'n*, 126 Idaho at 741–42, 890 P.2d at 327–28, a development impact fee was assessed for improvements requiring a building permit. Ordinance 2569 required that the revenue be spent on public facilities, such as library, police services, fire services, and streets. *Id.* Because the fee essentially funded the general revenue and did not account for any service relating to the development (i.e., it does not include hookup costs, drainage, sewer, water or other services associated with the building improvements), this Court noted that it was "antithetical to this Court's definition of a fee." *Id.* at 743, 890 P.2d at 329. "[A] fee serves only the purpose of covering the cost of the particular service provided by the state to the individual [as opposed to providing funding for public services at large]." *Id.* at 744, 890 P.2d at 330 (*citing Alpert v. Boise Water Corp.*, 118 Idaho 136, 145, 795 P.2d 298, 307 (1990); *Brewster*, 115 Idaho at 504–05, 768 P.2d at 767–68).

disposal fee was reasonably related to the benefit conferred even though some residents did not use Kootenai County's waste disposal site. *Id*. at 679–80, 769 P.2d at 556–57. This Court specifically distinguished *Kootenai* from *Brewster*, noting that in *Kootenai* there was specific legislative authorization for the imposition of a tax or fee for the acquisition and operation of Kootenai County's waste disposal site. *Id.* Again, here, there is no legislative authorization for the stormwater fee or statute to interpret.

Although useful in establishing the two-part test under *Brewster*, the facts in *Loomis*, 119 Idaho at 439, 807 P.2d at 1277, are also distinguishable because they deal with a sewer connection fee authorized under the Revenue Bond Act. This Court held that for the sewer connection fee not to be a disguised tax, it must be allocated and budgeted in conformity with the Revenue Bond Act. *Id.* "However, if fees are collected under the disguise of the Act and allocated and spent otherwise, then the fees are primarily revenue raising and will be construed as taxes." *Id.* The Revenue Bond Act is not applicable because no revenue bonds were issued by the City.

> 4.  *The City Has No Statutory, Constitutional, or Police Power Authority to Enact the Stormwater Utility Fee Under Any of the Statutes that the City Cites*

The City attempts to appeal the denial of its cross-motion for summary judgment citing I.A.R. 11(a)(1) in its Notice of Appeal. "This Court does not review denials of summary judgment after a judgment is made on the merits." *Grover v. Wadsworth*, 147 Idaho 60, 66, 205 P.3d 1196, 1202 (2009) (citing *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 26, 105 P.3d 676, 686 (2005)). "An order denying a motion for summary judgment is not an appealable order itself, nor is it reviewable on appeal from a final judgment." *Hunter v. Dep't of Corr.*, 138 Idaho 44, 46, 57 P.3d 755, 757 (2002). Thus, this Court declines to review this issue so far as the City attempts to appeal the denial of its cross-motion for summary judgment. However, to the extent that the arguments pertain to the issue of reversing the grant of summary judgment to the Entities, we will review such arguments.

The City contends that the stormwater fee was enacted pursuant to valid police power authority under the Revenue Bond Act, the Local Improvement District Code, and numerous provisions of Title 50 of the Idaho Code. The City does not provide any arguments for how those provisions authorize a fee; neither does the City refer to the specific sections on which it relies. The only argument that the City makes is that the stormwater fee is valid under the Revenue Bond Act, I.C. § 50-1027, *et seq.* That issue, however, is not before this Court because the City did not proceed under the Revenue Bond Act.

11

Regarding the Local Improvement District Code and the various Title 50 provisions of the Idaho Code, the City failed to provide argument or authority addressing these issues. The failure to support an alleged error with argument and authority is deemed a waiver of the issue. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). This Court will not consider an issue that is not "supported by argument and authority in the opening brief." *See Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008) (quoting *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006)); *see also* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon."). Thus, the City has waived these arguments.

## VI. CONCLUSION

This Court finds that the first step of the analysis leads to the conclusion that the assessment is a tax, not a regulatory fee. As per the second step, it is clear that the revenue to be collected from the stormwater utility fee has no rational relationship to a regulatory purpose because the stormwater fee is a tax. The stormwater fee is used to generate funds for the non-regulatory function of repairing, maintaining, and expanding the City's preexisting stormwater system and streets under *Brewster*. Ordinance 4512 is, therefore, an unauthorized tax intended to free-up the City's general revenues. It is for the Idaho Legislature to authorize such a tax.

The judgment of the district court is affirmed with costs awarded to the Entities. Neither side has requested attorney's fees.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON **CONCUR.**